Robert SEMLEK and Rebecca D. Semlek,
husband and wife, Appellants,

v.

NATIONAL BANK OF ALASKA, a corpora-
tion, and Roy K. Stigum and Vernon L.
DeBoer, co-partners, d/b/a Stigum and De-
Boer, Appellees.

No. 1052.

Supreme Court of Alaska.

Oct. 1, 1969.

James K. Tallman, Anchorage, for ap-
pellants.

Ronald G. Benkert, Lynn P. Bartlett,
McCutcheon, Groh & Benkert, Anchor-
age, for appellee National Bank of Alaska.

John K. Brubaker, Delaney, Wiles,
Moore & Hayes, Anchorage, for appel-
lees Stigum and DeBoer.

Before NESBETT, C. J., and DIMOND,
RABINOWITZ, BONEY, and CONNOR,
JJ.

## OPINION

CONNOR, Justice.

Robert Semlek and his wife Rebecca appeal from a summary judgment entered against them by the superior court. The facts as they appeared before the superior court judge ruling on the motion for summary judgment are as follows:

On April 25, 1963, the appellants executed a note in the amount of $6,700.00 payable to the National Bank of Alaska, one of the appellees. To secure payment of the note, on May 25 of the same year the appellants executed a deed of trust on two lots of real property in which the Title Insurance and Trust Company was named trustee and the National Bank of Alaska was named beneficiary. The deed was properly recorded on August 15, 1963. The payments on the note were to be $200.00 a month, including 8% interest per annum, and were to commence on September 16, 1963.

An additional loan had been granted by the National Bank of Alaska to the appellants who executed a note therefor on January 31, 1963, in the amount of $4,-213.50. This loan was in the form of an unsecured home improvement loan to be paid in monthly installments of $140.45 each and to be paid off by August 1, 1965.

The payments on the deed of trust note were extended by written agreement on two occasions after failure by appellants to make regular payments. These extension agreements were signed by appellant Robert Semlek and appellee Roy Stigum, then an officer of the bank. The first extension was executed on June 16, 1964, and extended the June 16, 1964, payment to the maturity date of the contract. At this time the appellants were one month in default. The second extension agreement was executed on February 25, 1965, and provided that only interest was to be paid for the months of September through December of 1964 and the first two months of 1965. Payments for March through August of 1965 were to be $100.00 each, and

thereafter the regular $200.00 monthly payments were to resume.

The note on the home improvement loan was also extended on two occasions by written agreement executed by Robert Semlek and Roy Stigum. The first extension, entered into on June 16, 1964, extended the June 1964 payment to the maturity of the contract. The second extension was executed on February 25, 1965, and extended the January and February 1965 payments to the maturity of the contract.

The appellants allege that an oral extension agreement was entered into between them and Roy Stigum, the bank officer, on or about July or August 1965. The terms of this oral agreement are said to have been that payments on the real estate loan would be stayed until such time as payments on the home improvement loan were paid off, oven if there might be minor defaults in the payment of the home improvement loan.

The only record of the appellants' payments on these loans is contained in the bank's ledgers which were made exhibits for the hearing on the motion for summary judgment. According to these records the appellants made no payments on the trust deed note after June 1965, and no payments were made on the home improvement loan after February 28, 1966.

After a number of requests by the bank for payments, a notice of default on the trust deed note was executed and recorded on October 12, 1966. The appellees included the $787.45 balance due on the home improvement loan in the documents effecting the foreclosure in addition to the $4,-978.04 principal due on the trust deed note. The proceeds of the foreclosure sale were applied to this unsecured debt. The foreclosure sale occurred on January 19, 1967, and the buyers were Roy Stigum and Vernon L. DeBoer, d/b/a Stigum and DeBoer, who bid $6,994.00. Stigum had resigned his position at the bank in May 1966 to enter a partnership with DeBoer.

Sometime before the foreclosure sale, Robert Semlek attempted to secure funds from the USARAL Credit Union in order to pay off the trust deed note. The loan was not granted, although an officer of the credit union testified on deposition that it probably would have been had the title search been completed before the sale.

Approximately one-half hour before the foreclosure sale the appellants recorded a deed conveying the property subject to the trust deed to one William Semlek, the brother of the appellant Robert Semlek. The appellants did not attend the sale and stated that they were confused as to the location. After the foreclosure sale and during the month of February 1967 appellants unsuccessfully attempted to purchase the property from Stigum and De-Boer.

The appellants filed their first complaint on March 23, 1967, in which they alleged the oral extension agreement and that foreclosure was the result of a conspiracy to deprive the appellants of their property. The appellees each filed an answer denying the allegations and counterclaimed for malicious prosecution. The counterclaims were lated dismissed. The appellees later moved for summary judgment, which was denied.

On April 19, 1968, the appellees moved to dismiss the complaint on the grounds that the appellants lacked capacity because they had transferred their title prior to the foreclosure sale. The motion was granted with leave to amend.

An amended complaint was filed which again alleged the oral agreement and the wrongful foreclosure and additionally alleged fraud. A new motion to dismiss was submitted on the same grounds as the first, and an additional ground stated that the complaint failed to allege fraud with particularity as required by Rule 9(b) of the Rules of Civil Procedure. The amended complaint was dismissed.

The appellants' third amended complaint was filed on July 1, 1968, which was answered by the appellees. A motion for summary judgment was again filed by the appellees. The hearing was held on July 23, 1968, and the motion was granted. The appellants have appealed from the entry of the summary judgment.

At the hearing on the motion for summary judgment the appellees stipulated, for purposes of the motion, that the oral extension agreement alleged by the appellants was true, to-wit, that the National Bank of Alaska would forbear any payments on the trust deed note until such time as the Semleks paid off the unsecured home improvement loan, even if there might be minor defaults in the payment of the latter loan. The court inquired of appellants' counsel the following: (1) whether the appellants admitted the existence of the notes for the two loans; (2). whether the appellants failed to make payments on the trust deed note after the date of the alleged oral agreement until the time of the notice of default; and (3) whether the appellants failed to make payments on the home improvement loan after February 1966. Appellants' counsel stated that there was no evidence to show that these statements were not true, even though Mr. Semlek felt that he might have made other payments on the home improvement loan.

The court then ruled that there existed no genuine issue of material fact, made findings of fact, and then ruled that the appellants had breached the oral agreement which gave rise to the bank's right to declare the loans in default and to proceed · with foreclosure. He further ruled that the appellants failed to establish a basis for their claim in tort.

■ Appellants claim that there are several issues of fact which should have precluded summary judgment. Certainly the summary judgment procedure under Civil Rule 56(c) cannot be used to deprive the appellants of a jury trial where there are genuine issues of fact. However, the procedure is proper where the pleadings, affidavits, depositions, and admissions on file show that there are no genuine

issues as to any material fact and that the moving party is entitled to judgment as a matter of law.[1]

The appellants' assertion that there is an issue of fact as to the existence of the alleged oral agreement and the representations made thereunder by Stigum is without merit. Both the existence and the terms of the oral agreement were established by the appellees' stipulation at the hearing on the motion. The stipulation was a proper basis for the judge's finding that there was no factual issue as to this matter. 6 J. Moore, Federal Practice ¶ 56.11 [1.–8 (2d ed. 1966)·].

Once the oral agreement had been established, the judge correctly found, as a matter of law, that the appellants had breached the agreement and that the National Bank of Alaska was then entitled to foreclosure. Under this agreement made in July or August, 1965, the payments on the secured loan would be stayed until such time as payments on the home improvement loan had been paid off, even if there might be minor defaults in the payment of the home improvement loan. The oral agreement was entered into sometime in July or August of 1965. Thereafter the appellants made no payments on the secured loan, and made only four payments on the unsecured loan, the last payment being in February 1966. The notice of default was executed in October 1966. Clearly, the failure to make any payments after February 1966 was more than a "minor default" under the oral extension agreement. Beagan v. Citizens Savings Bank, 68 R.I. 509, 30 A.2d 105, 108 (1943).

Appellants claim that there is a factual issue as to whether, prior to the foreclosure sale, there were funds available through the USARAL Credit Union to pay off the trust deed note and that the appellee bank was notified of this by an officer of the credit union. This claim is also without merit. As stated above, the facts before the judge showed that although the loan probably would have been granted, the funds had not been made available before the foreclosure sale. We need not discuss the effect of a tender prior to the sale, because it is clear that there was no tender here. A mere expression of hope and possibility of future payment is not tender. Willingness to pay must be accompanied by ability to pay. Ewing v. Miller, 335 S.W.2d 154, 158 (Mo.1960).

A more difficult question to dispose of is appellants' claim that there is an issue as to whether the foreclosure was "wrongful" because the bank included in the notice of default and the publication of the foreclosure sale the amount due on the unsecured loan with the amount due on the secured loan.[2] It was indeed established that the $787.45 balance due on the unsecured loan was included as a separate item in the notice of default and the public notice of sale along with the $4,978.04 balance due on the trust deed note. In their third amended complaint the appellants allege that this overstatement of the amount due on the secured debt was made in furtherance of a scheme between the National Bank of Alaska and the individual appellees to deprive appellants of their property.

It is generally held that where the amount due is grossly overstated or so excessive that it might deter bidders, it will render the foreclosure sale invalid. Peterson v. Johnson, 46 Wyo. 473, 28 P.2d 487, 91 A.L.R. 723 (1934). While noncompliance with the statutory provisions regarding foreclosure by the power under a mortgage or trust deed is not to be favored, the remedy of setting aside the sale will be applied only in cases which reach unjust extremes.

In *Peterson* the notice stated the amount due as $1,892.10 plus fees, whereas the actual amount due was $229.10 plus fees.

1. Whaley v. State, 438 P.2d 718 (Alaska 1968); Ransom v. Haner, 362 P.2d 282 (Alaska 1961).

2. AS 34.20.070(b) and AS 34.20.080(a) provide that the notice of default and the public notice shall state the amount of the obligation.

The court held the overstatement to be grossly excessive and set aside the sale. In Grace v. Noel Mill Co., 63 S.W. 246 (Tenn.1901), the court held the sale invalid where the notice of the lien stated the amount as $50,000, whereas the actual amount due was only $500.00. The United States Supreme Court set aside a sale in James v. Milwaukee & Minn. R. R., 6 Wall. 752, 73 U.S. 752, 18 L.Ed. 885 (1868), where the amount due to bondholders was $200,000 and the notice set forth the amount as $2,000,000 plus $70,000 interest.

Other cases have held that where the overstatement was not so excessive that it might have deterred bidders, and where there was no other evidence of fraud or bad faith, the sale would not be set aside. In Butterfield v. Farnham, 19 Minn. 85 (1872), where the excess was $7,000.00 over the $27,000 actually due, the court refused to set aside the sale. In Kerfoot v. Billings, 160 Ill. 563, 43 N.E. 804 (1896), the court held that overstating the indebtedness would not invalidate the sale where there was nothing to show that the defect resulted from a fraudulent design or operated to deter bidders from the sale.

In Mowry v. Sanborn, 62 Barb. (N.Y.) 223 (1872), the court refused to set aside the sale where the secured debt of $3,000.00 was overstated by $1,845.35. The court said at page 227:

"The defendant's counsel insisted, at the trial, that the claiming of too much, by $1845.35, in the notice of sale in this case, was a fraud upon the mortgagors, and rendered the foreclosure void. But no fraud was proved, and the excess in the notice, over the amount of the mortgage, may have been inserted therein by a mistake as to the legal rights of the owner of the mortgage; and because the mortgagor was in fact owing the full amount of money, claimed in the notice, on notes, drafts and other commerical paper held by the owner of the mortgage."

We find that the overstatement of the amount due on the secured debt was not so excessive that it might have deterred bidders. On the contrary, the price paid by Stigum and DeBoer was $6,994.00, an amount greater than both the debts together. Nor did appellants show at the hearing on the motion for summary judgment that they had any evidence that the overstatement either actually did deter bidders or that the overstatement was part of a fraudulent design. Once the appellees had made a clear showing in support of their motion for summary judgment, it was incumbent upon the appellants to set forth facts showing that they could produce admissible evidence which reasonably would tend to dispute the appellees' evidence and demonstrate that a triable issue existed. McKean v. Hammond, 445 P.2d 679 (Alaska 1968); Alaska-Canadian Corp. v. Ancow Corp., 434 P.2d 534 (Alaska 1964); Isler v. Jensen, 382 P.2d 901 (Alaska 1963); Gilbertson v. City of Fairbanks, 368 P.2d 214 (Alaska 1962).

Finally, appellants claim that the summary judgment against them on their count alleging misrepresentation was error. The appellants alleged that Stigum, with the purpose of depriving appellants of their property, "falsely and negligently" represented, with the knowledge that the representations were false, that the bank would forego payments on the secured loan until the unsecured loan was paid off, even if there might be minor defaults.

We think the court below correctly granted judgment for appellees on this count. Once the undisputed facts before the court established that the bank had done exactly what it had promised under the oral agreement and that the appellants had breached the oral agreement, it became clear that there was no misrepresentation and that the appellants therefore could not sustain their allegations of misrepresentation.

The judgment is affirmed.