Allen J. HARRIS and Billie J. Harris,
Appellants,

v.

ALASKA TITLE GUARANTY COMPANY,
Appellee.

No. 1578.

Supreme Court of Alaska.

May 25, 1973.

Joe P. Josephson, Anchorage, for appellants.

Roger Cremo, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

## OPINION

ERWIN, Justice.

On July 16, 1961, Allen conveyed property by warranty deed to Jackson. Concurrently, a deed of trust was executed by Jackson as trustor, Alaska Title Guaranty Company as trustee, and Allen as beneficiary.

On August 16, 1963, Jackson conveyed her interest in the property to Bradley by warranty deed dated August 16, 1963. Concurrently, a deed of trust was executed by Bradley as trustor, Alaska Title Guaranty Company as trustee, and Jackson as beneficiary. The Jackson deed of trust was specifically made subject to the Allen deed of trust, and the underlying obligation was, pursuant to the agreement between Jackson and Bradley, assumed by Bradley. The debt secured by the Allen deed of trust was $15,500.00. The debt secured by the Jackson deed of trust was $2,757.42.

On November 29, 1964, Bradley executed a deed of trust conveying the same property, subject to the Allen and Jackson deeds of trust, to Alaska Title Guaranty Company as Trustee and Harris as beneficiary to secure performance of an agreement.

Sometime in 1967, Bradley became delinquent in his payments to Allen and Jackson. Jackson wished to keep the Allen payments current, but she was advised that any payments she made to Allen on behalf of Bradley would not be secured by her (Jackson) deed of trust. On the advice of the title company, and unaware of the existence of the Harris deed of trust due to an error in preparing the title report, she accepted a new deed of trust from Bradley securing the entire amount ($15,168.88) then owed by Bradley to her and Allen. The new deed of trust and a reconveyance under the original Jackson deed of trust were recorded on February 9, 1967.

In the spring of 1967, 3000 Spenard Corporation became interested in acquiring the property. The corporation agreed to pay $25,500 for the property, provided Bradley could convey clear title. A title search disclosed the Allen, Jackson and Harris trust deeds. Contact with the encumbrancers indicated that the $25,500 would be sufficient to enable Bradley to secure releases of the trust deed and convey clear title. Accordingly the corporation deposited that amount in escrow with the title company and Bradley conveyed the property to 3000 Spenard Corporation.

Harris, however, refused to authorize the reconveyance of his deed of trust. On August 8, 1967, the title company then purchased the Allen and Jackson trust deeds for the purpose of clearing title by foreclosure using the 3000 Spenard Corporation's deposit to do so. Allen and Jackson executed assignments of their interests to 3000 Spenard Corporation. On October 10, 1967, the corporation reassigned the Allen and Jackson trust deeds to the title company.

Bradley owed the title company, as assignee of Allen and Jackson, a total of $15,509.87, plus interest from July 17, 1967. However, only $12,613.10 of the $15,509.87 was attributable to the Allen deed of trust while the balance was from the Jackson deed of trust. On December 22, 1967, the company recorded a notice of default. The notice declared that the Allen deed of trust was in default and that $15,509.87 plus interest was then owing on it.

The trustee's sale was held, pursuant to the notice of default and notice of sale, on March 28, 1968, at 10:15 a. m. Harris did not attend and sent no representative. The title company was the highest bidder and purchased the property for an offset bid of $13,649.66. The property was conveyed to the title company by trustee's deed on April 2, 1968. On the same date, the title company conveyed the property to 3000 Spenard Corporation.

Five days prior to the sale Harris, through his attorney, sent a letter to the title company's attorney. The letter expressed the opinion that the notice could not conceivably state the correct amount of the obligation and that, in any event, the deed of trust to be foreclosed may have

been extinguished as a consequence of merger when the Allen and Jackson deeds of trust were transferred to 3000 Spenard Corporation. The letter asked that the March 28th sale be postponed. The title company did not agree.

Harris initiated an action on March 27, 1968 praying for judgment declaring that the Allen deed of trust was "extinct, void and an annullity" and that his deed of trust was "a first deed of trust". He also asked that the company be "enjoined from continuing" the sale scheduled for the next day.

An order enjoining the company from further proceedings until the date of hearing was signed by the court. On April 16, 1968, the judge declined to issue a preliminary injunction thus permitting the title company to proceed with the sale.

The title company filed its motion for summary judgment on June 18, 1971. Pursuant to notice, the motion was heard on June 28th. Harris filed no opposition and did not appear. The court took argument and granted the motion.

On July 8, 1971, Harris moved for relief from judgment. His motion was supported by counsel's affidavit explaining Harris' failure to oppose the summary judgment motion and a memorandum detailing substantive objections to summary judgment. Harris submitted no affidavit or other evidence to controvert the showing made by the title company. By reply the title company joined issue on Harris' substantive arguments. The motion was heard on July 27th on the merits of Harris' opposition to judgment. The court again granted the title company's motion for judgment. Judgment dismissing the complaint with prejudice and awarding costs to the title company was entered on August 2, 1971.

In attacking the summary judgment below, Harris raises three major issues:

a. In a complex case which turns upon questions of motivation and intent, summary judgment is inappropriate.

b. The doctrine of merger of estates should have been applied in this instance.

c. Defects in the notice of default and facts of sale indicate that plaintiff may have been injured.

Since the first two issues are closely interrelated in this particular case, they will be discussed together.

■ Generally, the question of intent is essentially one of credibility. The United States Supreme Court has recognized this and urged that summary judgment be used sparingly where intent is the main issue.

> [W]here motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury. . . .[1]

As recently as 1971, this court said, "The most difficult determinations lie in the area of credibility. The question of when summary judgment should be denied because of credibility is difficult to determine."[2]

■ Harris is quite correct when he states that the question of merger inevitably involves the issue of intent. The doctrine of merger "is frequently applied to mortgages, but generally only when it accords with the actual or presumed intention of the parties."[3]

1. Poller v. Columbia Broadcasting System, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458, 464 (1962) (Footnote omitted.).

2. Braund, Inc. v. White, 486 P.2d 50, 53 · n. 3 (Alaska 1971) ; see e. g. McKean v. Hammond, 445 P.2d 679 (Alaska 1968) ; Hobbs v. Mobil Oil Co., 445 P.2d 933 (Alaska 1968) ; Bertram v. Harris, 423 P.2d 909 (Alaska 1967) ; Wilson v. Pollet, 416 P.2d 381 (Alaska 1966) ; Maier v. City of Ketchikan, 403 P.2d 34 (Alaska 1965) ; but see Morrison v. City of Anchorage, 390 P.2d 782 (Alaska 1964).

3. Tiffany, Real Property (Abridged) § 917, at 984 (1940). 9 Thompson on Real Property, § 4798, at 586 (1958 Replacement). See Factors' & Traders' Ins. Co.

■■ The mere fact that there are issues of credibility, does not preclude summary judgment. In *Braund,* this court said that:

the party seeking the judgment must not only prove his own case but also disprove the affirmative defenses of his opponent . . . . [But] [t]he respondent must present *factual* material to avoid summary judgment, and he may not rely on general allegations. 486 P. 2d at 54 n.5 (Emphasis added.)

The title company offered proof before the court below that there was never any intention of a merger by initial transfer of the Allen and Jackson deeds of trust to 3000 Spenard Corporation. Harris, on the other hand, offered nothing more than general allegations. Given this, it does not seem unreasonable for the superior court to find that no triable issue of fact existed.[4]

■■ However, even if this court were to take the position that there was an issue of fact which should have gone to trial, the resulting error of the superior court in granting summary judgment is rendered harmless because, as a matter of *law,* "[t]he presence of an intermediate estate [i. e. the Harris deed of trust] prevents a merger."[5]

As one court has put it:

Equity will not declare a merger under circumstances which will give the holder of an intervening incumbrance [sic] a greater lien and priority than he had.[6]

On the facts presented to the superior court, we agree there was no merger of estates, and that summary judgment was properly entered.

■ As a final issue appellant urges that the notice of default was erroneous and thus the foreclosure was improper. More specifically, they contend that the notice of default set forth the amount owed and in default of $15,509.87, instead of the amount of $12,613.10 and, thus, they were prejudiced in this case.[7]

The Harrises cite the decision in Semlek v. National Bank of Alaska, 458 P.2d 1003 (1969), in support of their contention that the error invalidated the trustee's sale and that the sale must therefore be set aside. While *Semlek* is directly on point, the Harrises' reliance on the case is misplaced. *Semlek* concerned a notice of default which had included, in the amount stated as owing on the deed of trust obligation, an amount owed to the beneficiary on an unsecured loan. Claiming that the overstatement invalidated the trustee's sale, the

v. Murphy, 111 U.S. 738, 4 S.Ct. 679, 28 L.Ed. 582 (1884). Merger may arise in three ways: the mortgagee may acquire the equity of redemption from the mortgagor; the person who owns the equity of redemption may acquire the mortgage lien; or a third party may purchase both interests. *See* Kelly v. Weir, 243 F.Supp. 588 (E.D.Ark.1965).

4. Miller v. City of Fairbanks, 509 P.2d 826 (Alaska, 1973); Nizinski v. Golden Valley Electric Association, Inc., 509 P. 2d 280 (Alaska, 1973).

5. 9 Thompson on Real Property, § 4798, at 584 (1958 Replacement); *accord* Anno. 95 A.L.R. 629 (1935).

6. Toebe v. Wulfing, 140 S.W.2d 1116 (Mo. App.1940); *accord* 4 American Law of Property, § 16.144, at 341 (1952):
More generally the decisions may be justified on grounds of unjust enrichment, a doctrine implicit in the rationale of fairness in giving effect to the mortgage creditor's intent when it ap-

pears. By the destruction of the prior mortgage, the later lien or interest is elevated to a priority for which its owner paid nothing and hence is, as to him, a pure windfall. And it is a windfall at the expense of the prior mortgagee. *See also* Factors' & Traders' Ins. Co. v. Murphy, 111 U.S. 738, 4 S.Ct. 679, 28 L.Ed. 582 (1884); Kelly v. Weir, 243 F.Supp. 588 (E.D.Ark.1965); Ross v. Loyola Fed. Sav. & Loan Assn., 245 Md. 507, 226 A.2d 553 (1967); American Sav. & Loan Ass'n v. Eidelberg, 54 Misc. 2d 668, 283 N.Y.S.2d 255 (Supreme Court Rockland Co. 1967); Small v. Cunningham, 120 N.W.2d 13 (N.D.1963). *See generally* 3 Powell on Real Property § 459 passim (Rohan ed. 1970); 5 Tiffany, Law of Real Property, § 1481, passim (3rd ed. 1939).

7. There is a question of whether the amount claimed due and owing was misstated since the title company had in fact acquired both the Allen and Jackson deeds of trust.

debtor sued to have the sale set aside. Summary judgment dismissing the complaint was granted to the defendant bank, and the debtor appealed.

This court affirmed the summary judgment, holding that "the remedy of setting aside the sale will be applied only in cases which reach unjust extremes."[8] This court identified the following considerations as relevant to a determination of whether unjust extremes have been reached:

> "The defendant's counsel insisted, at the trial, that the claiming of too much, by $1845.35, in the notice of sale in this case, was a fraud upon the mortgagors, and rendered the foreclosure void. But no fraud was proved, and the excess in the notice, over the amount of the mortgage, may have been inserted therein by a mistake as to the legal rights of the owner of the mortgage; and because the mortgagor was in fact owing the full amount of money, claimed in the notice, on notes, drafts and other commercial paper held by the owner of the mortgage." 458 P.2d at 1007. (Quoting from a New York case.)

Additionally, *Semlek* required the party claiming error to come forward with evidence that would tend to prove that they were in fact prejudiced by the "error":

> Once the appellees had made a clear showing in support of their motion for summary judgment, it was incumbent upon the appellants to set forth facts showing that they could produce admissible evidence which reasonably would tend to dispute the appellees' evidence

and demonstrate that a triable issue existed. 458 P.2d at 1007.

As previously noted, no such showing was made by the Harrises.

No actual problem appears from the record concerning the Harrises' ability to confirm the amount in default to the title company and thus to protect their interest at the sale. While the record does not show that the title company disclosed such information, it does demonstrate that the Harrises did have access to information concerning the indebtedness. It is also clear from the record that the Harrises did not attend and were not represented at the sale. Had the Harrises in fact been concerned about possible discrepancies in the amount claimed to be owed in the notice, the sale would have provided an appropriate opportunity to seek clarification. Their attendance would have been particularly appropriate to substantiate any claim that they made an attempt prior to the sale to obtain information about the amount owed and could not obtain such information. In addition to the information they might have acquired, they would have discovered at the sale that the title company exercised its offset only as to the amount in default from the "Allen" portion of the debt; and that, contrary to the allegation of their complaint, they would not have been "required to make an unnecessary [high] bid in order to protect their interest."

The decision of the trial court is hereby affirmed.

FITZGERALD, J., not participating.

8. 458 P.2d at 1006.