**NATIONAL BANK OF ALASKA,**
Appellant,

v.

**Edwin S. WARFLE, Jodine C. Warfle,
and First National Bank of
Anchorage, Appellees.**

No. S–4324.

Supreme Court of Alaska.

June 26, 1992.

Charles G. Evans, Law Offices of Charles G. Evans, Anchorage, for appellant.

Allan Beiswenger, Robinson, Beiswenger & Ehrhardt, Soldotna, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

COMPTON, Justice.

National Bank of Alaska appeals the superior court's grant of summary judgment in favor of Edwin Warfle and Jodine Warfle, holding that they had fulfilled their loan obligation to the bank. The bank also appeals the denial of its own motion for summary judgment. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1983 the National Bank of Alaska (NBA), with participation by the Alaska Industrial Development Authority (AIDA), loaned $275,000 to Edwin Warfle, Robert Aikins and Pauline Aikins. The loan was to finance the construction of a commercial project. The project, Country Villa Mall, was a shopping center located off the Sterling Highway near Soldotna. Once the construction was finished the loan was converted to permanent financing and a new promissory note was executed. The debt was secured by the Country Villa Mall property. In February 1988 Jodine Warfle assumed the Aikins' obligation and NBA released the Aikins from their obligation to pay the note. The Warfles also gave NBA additional security for the note.

The Warfles encountered difficulties with the project, foremost of which was the proposed condemnation of a significant part of the property for expansion of the Sterling Highway. The Deed of Trust provided that any condemnation award would be assigned to NBA.[1] Mr. Warfle stopped making payments on the loan and requested that NBA wait and restructure the arrangement after the condemnation and appraisal was completed. Warfle offered NBA all the proceeds of the condemnation plus other compensation should the taking award be insufficient. NBA reduced the monthly obligation to interest payments.

In October 1988 the Warfles stopped making payments. On December 6, NBA wrote to the Warfles informing them of default and accelerating the balance due on the note. At that time, the Warfles owed $269,242.03. Mr. Warfle's written response admitted his default and announced his intention not to pay. NBA initiated foreclosure proceedings on March 21, 1989. In March 1990 Mr. Warfle began negotiations with the state over condemnation of the Country Villa Mall. Mr. Warfle convinced the state that the taking amounted to at least $225,000. In May the property was conveyed to the state for $225,000.

On May 21, NBA signed a Request for Full Reconveyance. NBA and the Warfles signed a Memorandum of Agreement. Each document indicated that the condemnation compensation fully discharged the Warfles' debt.[2] NBA now alleges that these form documents were executed by

---

1. The deed of trust provided in part:

11. CONDEMNATION.... The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Lender subject, if this Instrument is on a Leasehold, to the rights of lessor, under the ground lease.

Borrower authorizes Lender to apply such awards, payments, proceeds or damages, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to restoration or repair of the Property or to payment of the sums secured by this Instrument, whether or not then due, in the order of the application set forth in paragraph 3 hereof, with the balance, if any, to Borrower.

2. Paragraph 3 of the Memorandum of Agreement stated:

The vendor or vendors hereby agree that the compensation herein provided to be paid, includes full compensation for their interests, and the interests of their life tenants, remaindermen, reversioners, lienors and lessors, and any and all other legal and equitable interests which are or may be outstanding, and said vendor agrees to discharge the same.

The memorandum was signed by the Warfles and NBA's assistant cashier.

The Request for Full Reconveyance contained the standard paragraph:

All sums secured thereby have been fully paid. You are hereby requested and directed to cancel all evidences of indebtedness secured by said Deed of Trust and to reconvey, without warranty, the estate now held by you under the same.

This form was also signed by NBA's assistant cashier.

mistake. In receiving the funds from the state, NBA exchanged with the state an addendum to the Memorandum of Agreement and a new draft of the Request for Full Reconveyance, instead of the memorandum signed by the Warfles and the original request form. The revised documents expressly reserved NBA's rights to collect from the Warfles the balance of their debt not covered by the condemnation award.[3]

Before the corrected documents were exchanged with the state, NBA moved for summary judgment. The Warfles opposed the motion and filed their own cross-motion for summary judgment based on the reconveyance documents and allegations that the acceleration of the debt was improper.

The trial court granted the Warfles' Motion for Summary Judgment and denied NBA's motion. NBA appeals.

## II. DISCUSSION

### A. STANDARD OF REVIEW

On appeal from an award of summary judgment, "this court must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment on the law applicable to the established facts. All reasonable inferences of fact from proffered materials must be drawn against the moving party ... and in favor of the non-moving party." *Sea Lion Corp. v. Air Logistics of Alaska,* *Inc.,* 787 P.2d 109, 116 (Alaska 1990) (citations omitted).

### B. THE MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT

NBA appeals the denial of its motion for summary judgment on the judicial foreclosure of the remainder of the Warfles' debt. NBA argues that "[o]ther than the mistaken execution of the documents in connection with receipt of the condemnation proceeds, no evidence submitted by the Warfles warranted a denial of NBA's motion for summary judgment."

The Warfles contend that summary judgment was properly granted in their favor because the Memorandum of Agreement constituted an accord and satisfaction. They argue that their duty to pay the remainder of their debt claimed by NBA was thus discharged. They contend that under the accord and satisfaction they agreed to accept a low valuation on their property during the condemnation proceedings, and to forgo their improper acceleration defense to the foreclosure, if NBA would discharge the entire debt and not pursue the foreclosure upon receipt of the condemnation proceeds. They contend that the complete discharge of the obligation on the note was the result of "protracted negotiations." Therefore, the Memorandum of Agreement is a binding settlement which must be enforced.[4]

**3.** The ADENDUM [sic] TO MEMORANDUM OF AGREEMENT BETWEEN EDWIN S. WARFLE AND JODINE WARFLE AND THE DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES reads in part:

The consent of NATIONAL BANK OF ALASKA to that certain agreement [between the Warfles and the state] ... and the acceptance of National Bank of Alaska of the sum of $224,505.21 is expressly conditioned upon National Bank of Alaska applying the sum accepted as a credit to that certain promissory note.... By accepting the sum of $224,-505.21, National Bank of Alaska expressly reserves any and all of its rights to collect all sums remaining owed pursuant to the original note and the modification. By accepting the sum of $224,505.21, it is not the intention of National Bank of Alaska to waive, release, modify or in any manner alter any of its rights against [the Warfles] other than to ac-

cept and to credit the payment towards partial payment of the note and to release the security interest of National Bank of Alaska.... The addendum was signed only by NBA's assistant cashier.

The revised REQUEST FOR FULL RECONVEYANCE substituted the following language for the paragraph quoted in the previous footnote:

$224,505.21 of the sums secured thereby have been paid. You are hereby requested and directed to credit the indebtedness secured by said Deed of Trust with the payment of the sum of $224,505.21 and to reconvey, without warranty, the estate now held by You under the same.

**4.** At his deposition, Mr. Warfle stated that when he signed the Memorandum of Agreement he had no previous agreement that NBA would also sign the memorandum. Thus the Memorandum

### 1. Accord and Satisfaction.

"An accord is a contract between a creditor and a debtor for a settlement of the creditor's claim by some performance other than that which is due. Satisfaction is the performance of such a contract." *Air Van Lines, Inc. v. Buster*, 673 P.2d 774, 777 (Alaska 1983) (citations omitted). Accord and satisfaction is "one of the recognized methods of discharging and terminating an existing right and constituting a perfect defense in an action for the enforcement of a previous claim." 6 Arthur L. Corbin, *Corbin on Contracts* § 1276, at 115 (1962).

■■■ The enforceability of an accord is governed by the general rules of contracts. *McKibben v. Mohawk Oil Co.*, 667 P.2d 1223, 1227 (Alaska 1983). Thus, an accord "[l]ike any contract ... requires an offer, acceptance, and consideration." *Gudenau & Co. v. Sweeney Insurance, Inc.*, 736 P.2d 763, 770 (Alaska 1987).

### a. Offer.

■■■ In order to find that there was a valid accord and satisfaction it must first be determined that an offer of accord was made. Moreover, we conclude that an intent to offer an accord must exist. *Accord Lundeen v. Cozy Cab Mfg. Co.*, 179 N.W.2d 73, 76 (Minn.1970). Although the requirement of a "meeting of the minds" generally is relaxed in analyzing accords,[5] 6 Arthur L. Corbin, *Corbin on Contracts* § 1279, at 130 (1962), the accord and satisfaction should not be the result of mere fortuity. Some "antecedent discussion" of the accord is ordinarily required. 6 Arthur

L. Corbin, *Corbin on Contracts* § 1277, at 123 (1962).

Summary judgment should not have been awarded to the Warfles if NBA demonstrated that material issues of fact exist concerning whether the Warfles intended the Memorandum of Agreement to be an accord and the extent to which the communications that preceded the memorandum were "antecedent discussions."[6] Furthermore, summary judgment should have been awarded NBA on this issue if we are persuaded that one of the elements of accord and satisfaction was absent as a matter of law.

The Warfles contend that they offered to accept an inadequately low valuation of their property by the state and to not assert their improper acceleration defense to the foreclosure action in exchange for NBA's agreement to discharge the entire debt. That is, they contend that they offered to settle the entire dispute.

The only evidence supporting the inference that the Warfles intended to offer NBA an accord and satisfaction by signing the Memorandum of Agreement is that Mr. Warfle believed that NBA would be bound by the same document that he was signing. There were no antecedent discussions concerning a settlement of the debt acceleration dispute. There were not the "protracted negotiations" claimed by the Warfles. There is virtually no evidence in the record that would support a finding that the Warfles ever confronted NBA with any offer regarding the acceleration dispute. This evidence, viewed most favorably to

---

of Agreement is the only contract, written or oral, which could be the accord.

**5.** This court has before held that for executory accords a meeting of the minds is required. *See Alaska Creamery Products, Inc. v. Wells*, 373 P.2d 505, 511 (Alaska 1962). An executory accord is an agreement whereby the parties exchange promises to settle a dispute. *See id.* at 511. It is an accord before satisfaction has been performed and the duties have thus not yet been discharged. *Id.* In this case, the Memorandum of Agreement purportedly formed a completed accord and satisfaction because the performance of settling the dispute and assigning the condemnation award were both accomplished by the memorandum.

**6.** This burden is not demanding. We have held before that summary judgment was inappropriate where the party resisting the summary judgment on accord and satisfaction could support its allegations by concrete facts. *Gudenau & Co. v. Sweeney Ins., Inc.*, 736 P.2d 763, 770 (Alaska 1987). In *Sweeney Insurance*, this support consisted of one statement by the opposing party. *Id.* Moreover, summary judgment should be used sparingly where intent is the main issue. *Harris v. Alaska Title Guaranty Co.*, 510 P.2d 501, 503 (Alaska 1973). Thus, issues of material fact are easily raised in scrutinizing an alleged accord and satisfaction.

the Warfles, is insufficient as a matter of law to support a finding that an offer of accord and satisfaction was made to NBA. Furthermore, the Memorandum of Agreement was not prepared by either party, but by the state.

Neither was there any discussion that the payment of the condemnation award would trigger the discharge of the entire debt. Indeed, the record is replete with support for NBA's contention that there was no intent to enter into an accord setting the dispute. In an affidavit attached to the Warfles' opposition and cross-motion, filed *after* the execution of the Memorandum of Agreement, Mr. Warfle states: "The State has offered to purchase the property for $225,000.00, and I have accepted the offer. ¶ 8. The Bank has agreed to the proposed purchase of the property by the State, and the purchase money will be *applied towards* the balance of the note owed by me to the Bank." (Emphasis added). Mr. Warfle said the same in his deposition. Also, NBA produced the state's record of the condemnation meetings with Mr. Warfle. This evidence also reflects that Mr. Warfle believed that he would have to "work out the balance of what he owed to the bank."

We conclude that this evidence, viewed most favorably to the Warfles, is insufficient as a matter of law to support a finding that the Warfles intended to make an offer of accord and satisfaction. As we have stated, we will look to the presence of antecedent discussions to evidence an intent to make an offer. *See supra.* In this case there is a noticeable absence of any discussion of a mutual withdrawal of the ongoing litigation between the parties. Thus, we conclude that an accord and satisfaction was not executed and is not a viable defense to NBA's foreclosure action.

b. Acceptance and Consideration.

 In view of our disposition of the issue of offer, we need not address accept-

ance and consideration. Regarding acceptance, however, we express our disapproval of the trial court's implicit rejection of our decision in *First National Bank of Fairbanks v. Taylor*, 488 P.2d 1026 (Alaska 1971).

In *Taylor*, the borrower executed a note to the bank secured by the assignment of a real estate contract from which the borrower received profits. The assignment provided for the bank to receive and apply to the borrower's note all sums due to the borrower. After the final payment on the contract was made a balance of $4,795.13 remained due on the note. Because the bank no longer had any interest in the real estate, it executed a standard form Satisfaction and Discharge of Real and Chattel Mortgage. The form document indicated that the entire note was paid. *Id.* at 1027. The bank initiated an action to collect on the balance due on the note alleging that the form document was filed in error. The trial court dismissed the complaint. *Id.* at 1028.

The dismissal was reversed. We held that although the document may have been some indication that a discharge was executed, the document itself was not conclusive evidence: "[T]he statement in the satisfaction and discharge of the mortgage that the note had been paid was not conclusive evidence of payment. The Bank should have been allowed to attempt to show mistake in the execution of that document." *Id.* at 1029–30. [7]

We supported our holding by analogizing to negotiable instruments. We reasoned:

> While stamping or endorsing a note as paid may give rise to a presumption of payment, the presumption may be rebutted and recovery had upon a showing of mistake or error.... When one considers that a statement of payment on the face of a note is not conclusive evidence, then it seems obvious that a statement of payment in a separate document, here

---

**7.** The holding in *Taylor* arose from a discussion of section 122 of the Alaska Negotiable Instruments Law, which addressed gratuitous and voluntary renunciation, not discharge by payment. *Taylor*, 488 P.2d at 1029. Although we found

that that section did not apply to the facts in *Taylor*, we held that even if the section were applicable, the document would not be conclusive evidence. *Id.* at 1029–30.

the mortgage discharge, should not be conclusive evidence of payment. *Id.* at 1031. We concluded: "In our view, a simple statement indicating payment, whether on the face of a note or in a separate document, cannot support a dismissal where mistake is claimed." *Id.*

NBA contends that *Taylor* is directly on point. NBA claims that the form documents discharging the Warfles of all liability were executed mistakenly. The assertion that this was a mistake was in the record before the trial court. NBA also points to corroborative evidence that neither Warfle nor NBA ever intended the payment of the condemnation award to discharge the Warfles from their obligation on the note.

The Warfles claim that *Taylor* does not apply when there is an accord and satisfaction. They argue that against the backdrop of the settlement, mistaken execution cannot void the settlement as a matter of law.

 However, mistake may be grounds for reforming or setting aside an accord just like any other contract. 6 Arthur L. Corbin, *Corbin on Contracts* § 1292, at 179 (1962).[8] *Taylor* applies and the Memorandum of Agreement is not conclusive evidence of acceptance.

**8.** This is especially true in cases of mistaken execution. The defense of mistake is more limited in cases of mistake in scope of settlement. "[W]here parties are consciously disputing an issue and agree upon a compromise in order to settle it, they are making no mistake as to the matter in issue and thus settled. There must be a mistake as to matters that were not in issue and were not compromised in order that the settlement may be voidable on the ground of mistake." 6 Arthur L. Corbin, *Corbin on Contracts* § 1292, at 179–80 (1962).

**9.** Failure to accelerate the debt properly would not justify a judgment discharging the Warfles *from the entire obligation* but would affect what portion of the debt was presently and past due.

The Warfles also argued that "equitable concerns" prohibited a judgment against them.

**10.** AS 09.45.220 reads:

Effect of payment before judgment or sale. If, before a judgment is given, the amount then due, with the costs of action, is brought into court and paid to the clerk, the action

### 2. *Other Defenses.*

NBA does not address the Warfles' alternate grounds for summary judgment. In their cross-motion for summary judgment, the Warfles' first argued that they were entitled to summary judgment because NBA had not properly accelerated the Warfles' debt.[9] This argument was entirely independent of its reliance on the Memorandum of Agreement. The order granting summary judgment did not specify on which contention it relied. The order clarifying the judgment merely stated that the first order "was based on a determination of the merits of the case, and not on AS 09.45.220."[10]

Based on the record and the briefing before this court, we conclude that the issue of whether the debt was properly accelerated was not adjudicated.[11] We remand for a determination of the validity of the Warfles' defense of improper acceleration.

### III. CONCLUSION

The order of the superior court granting summary judgment in favor of the Warfles is REVERSED. The denial of NBA's motion for summary judgment is REVERSED

shall be dismissed, and, if the same be done after judgment and before sale, the effect of *the judgment as to the amount due and paid* shall be terminated and the execution, if any have issued, be recalled by the clerk. When an installment not due is adjudged to be paid, the court shall determine and specify in the judgment what sum shall be received in satisfaction thereof, which sum may be equal to the installment or otherwise, according to the present value thereof.

**11.** In their Reply Memorandum to NBA's Motion for Reconsideration, the Warfles stated that "It is clear from the circumstances that the Court's grant of summary judgment in this case in favor of Defendant Warfles was based upon the Defendants' argument that Plaintiff NBA had waived any deficiency claim against Defendant Warfles, or that such claim was barred by the Doctrine of Accord and Satisfaction." This statement explained why summary judgment was not based on AS 09.45.220. It does not explain why the summary judgment was not based on the allegedly improper acceleration.

in part, and REMANDED for further proceedings consistent with this opinion.