**STATE of Alaska, REAL ESTATE COMMISSION, Appellant,**

v.

**Myrna JOHNSTON and Eva Loken, Appellees.**

**No. 7826.**

Supreme Court of Alaska.

May 4, 1984.

---

Richard D. Monkman, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for appellant.

W. Richard Fossey, Bankston & McCollum, Anchorage, and Peggy Alayne Roston, Anchorage, for appellees.

Lewis Gordon, Baily & Mason, Anchorage, for Alaska Ass'n of Realtors, amicus curiae.

Before BURKE, C.J., and RABINOWITZ, COMPTON and MOORE, JJ.

## OPINION

PER CURIAM.

This appeal presents a first impression question as to the scope and applicability of Alaska's Real Estate Surety Fund.[1] The issue raised is one of statutory construction, namely, whether the Real Estate Surety Fund provides recovery to claimants who, in the context of real estate transactions, suffer losses due to innocent misrepresentations made by real estate brokers or agents.

## I. FACTS

Newly arrived in Alaska the Mulhollands sought to purchase a home and contacted Eva Loken, a sales person with Area Realtors. In August of 1981, Loken showed the Mulhollands Larry Gross' home located near Eagle River. The following day the Mulhollands made an offer on the house to which the owner counter-offered. On August 10, 1981, the parties entered into an earnest money agreement and the Mulhollands tendered one thousand dollars in earnest money to Loken.

Subsequent to the initial earnest money agreement the Mulhollands contemplated rescinding on the purchase agreement and signing an earnest money agreement on another home; they were distraught over what they perceived as apparent misrepresentations made by Loken concerning midwinter sunlight and driveway accessibility. Eventually, after discussions with Loken and Myrna Johnston, an associate broker with Area Realtors, the Mulhollands decided to go through with the deal and they signed an extension to the earnest money agreement.

On October 14, 1981, the Mulhollands were asked to accept an "as-built" survey of the property; however, because the survey failed to depict the driveway the Mulhollands refused to sign or accept the survey. Johnston ordered an updated survey. The updated survey revealed that the driveway encroached upon neighboring land to the extent of ten feet by thirty feet.

Having contacted the seller, Larry Gross, to discuss alternative solutions to the encroachment problem, Johnston informed Loken, who in turn contacted the Mulhollands. During the phone conversation between Loken and the Mulhollands a meeting was arranged for October 23, 1981—the day the earnest money agreement expired.

1. AS 08.88.450–500.

At the October 23rd meeting between the Mulhollands and Johnston, the Mulhollands terminated the transaction and signed a recission agreement which provided that the earnest money would be returned. Johnston, however, on the advice of Area Realtors' attorney, never executed the recission agreement; the Area Realtors' attorney felt that the encroachment was a curable defect which did not render title to the property unmarketable.

In December 1981, the Mulhollands filed a claim with the Real Estate Commission for the reimbursement of their earnest money deposit. Thereafter, a Real Estate Commission hearing examiner conducted a hearing on the Mulhollands' reimbursement claim. The hearing examiner concluded that Loken and Johnston had innocently misrepresented the boundaries of the Gross property. The misrepresentation of fact, according to the hearing officer's finding, "consisted of the implied assertion that the driveway was included in the boundaries of the Gross property." Concluding that the Real Estate Surety Fund provided recovery for innocent misrepresentations of this nature the hearing officer recommended that the Fund reimburse the Mulhollands' earnest money deposit.

The Real Estate Commission adopted the recommended decision and awarded the Mulhollands the equivalent of their earnest money deposit. The Commission's decision was then appealed to the superior court.

The superior court reversed the award, holding that the Surety Fund did not provide recovery for innocent misrepresentation. The State of Alaska Real Estate Commission now brings this appeal.

## II. THE REAL ESTATE SURETY FUND DOES NOT PROVIDE REIMBURSEMENT TO CLAIMANTS FOR INNOCENT MISREPRESENTATIONS MADE BY MEMBERS OF THE REAL ESTATE PROFESSION.

■ As indicated at the outset, the principal issue presented in this appeal is whether the Real Estate Surety Fund is obligated to reimburse claimants for innocent misrepresentations made by members of the real estate profession. In relevant part AS 08.88.460(a) provides as follows:

*Claim for payment.* (a) A person seeking reimbursement for a loss suffered in a transaction as a result of fraud, misrepresentation, deceit, or the conversion of trust funds on the part of a real estate broker ... shall make a claim to the commission for reimbursement....[2]

The superior court concluded that "misrepresentation" as used in AS 08.88.460(a) was intended to encompass only intentional wrongdoing, not innocent or negligent wrongdoing. More particularly the superior court reasoned as follows:

I think the term misconduct as used in Section (b) of the statute implies inten-

---

**2.** The full text of AS 08.88.460(a) and (b) reads as follows:

(a) A person seeking reimbursement for a loss suffered in a transaction as a result of fraud, misrepresentation, deceit, or the conversion of trust funds on the part of a real estate broker, associate real estate broker, or real estate salesman licensed under this chapter shall make a claim to the commission for reimbursement on a form furnished by the commission. The form shall be executed under penalty of perjury, and information required to be supplied shall include the following:

(1) the name and address of the real estate broker, associate real estate broker, or real estate salesman;

(2) the amount of the alleged loss;

(3) the date or period of time during which the alleged loss occurred;

(4) the date upon which the alleged loss was discovered;

(5) the name and address of the claimant; or [sic?]

(6) the general statement of facts relative to the claimant.

(b) A copy of a claim filed with the commission under (a) of this section shall be sent to the real estate broker, associate real estate broker, or real estate salesman alleged to have committed the misconduct resulting in losses, as well as a real estate broker employing an associate real estate broker or real estate salesman alleged to have committed the conduct resulting in losses, at least 20 days before any hearing held on the claim by the commission.

tional-type wrongdoing, not negligent or innocent wrongdoing. And I think the statute's use of the phrase fraud, deceit, misrepresentation or conversion, particularly with the term misrepresentation coming sandwiched between fraud and deceit and coming as it does amidst a group of intentional-type wrongdoings, coupled with the presence of the word misconduct in subsection (b), all indicate that the proper construction of this statute lies in construing it as including among its terms only intentional-type wrongdoing, not innocent or negligent but nonreckless wrongdoing. And I think that that's squarely in line with the comments of the chairman of the commerce committee. Furthermore, it seems to me that with a real estate fund limited by law to only $500,000.00, if we're going to open the flood gates to innocent and negligent misrepresentation claims being made against this fund, there very likely soon wouldn't be any fund to collect for dishonest-type actions on the part of the real estate profession. So I'm going to reverse the real estate commission and award judgment in this case in favor of the appellants.

■ In our view, the superior court correctly analyzed the question, and thus we affirm the superior court's construction of AS 08.88.460.[3]

Prior to the establishment of the Real Estate Surety Fund in 1974, real estate brokers were required to obtain a real estate bond. This corporate bond was made payable to the state and was breached if the licensee injured another by a wrongful act or default in the conduct of the business for which the license was issued. In 1974 the legislature created the Real Estate Surety Fund. AS 45.85.010. [§ 1 Ch. 143 SLA 1974] As originally enacted the Real Estate Surety Fund functioned simi-

larly to the surety bond requirement. In relevant part the Surety Fund Act provided that a licensed real estate broker when obtaining or receiving a real estate license, in lieu of obtaining a corporate surety bond, had to pay a bond fee to the commissioner. [AS 45.85.020(a)] Recovery from the newly established surety fund was conditioned upon the claimant first obtaining "a final judgment in a court against a real estate broker ...." If judgment was not satisfied within thirty days from the court order, the claimant could apply for a post-judgment order directing payment out of the Real Estate Surety Fund.

In 1980 the Real Estate Surety Fund Act was amended, providing for a simpler recovery process. [AS 08.88.450–.500] The 1980 amendment obviated the requirement that the claimant first obtain a civil judgment before filing a claim for reimbursement; instead, the Real Estate Commission was remolded to function in a quasi-judicial role, adjudicating the merits of Surety Fund claims in administrative hearings. [§§ 34–36 Ch. 167 SLA 1980] Procedures governing the Real Estate Commission's administration of Surety Fund claims are provided for in 12 AAC 64.280–.330.

■ As the superior court correctly emphasized, nothing in the historical development of the Real Estate Surety Fund directly indicates legislative intent as to the scope of the Fund's coverage. Given this background, we think a textual analysis of AS 08.88.460 is controlling.[4] The apposition of the term "misrepresentation" to the terms "fraud," "deceit," and "conversion" persuades us that misrepresentation should be limited to only wrongful misrepresentations. A widely applied tenet of statutory interpretation is that if "the legislative intent or general meaning of a statute is not clear, the meaning of doubtful words may be determined by reference to their associa-

---

3. The applicable standard of review here is one of independent judgment. *Wien Air Alaska, Inc. v. Dept. of Revenue,* 647 P.2d 1087, 1090 (Alaska 1982).

4. In *State v. Alex,* 646 P.2d 203, 209 n. 4 (Alaska 1982), we held that the plainer the statute's

language, the more convincing contrary legislative history must be. *See also City of Homer v. Gangl,* 650 P.2d 396, 400 n. 4 (Alaska 1982); *see gen. North Slope Borough v. Sohio Petroleum Corp.,* 585 P.2d 534, 540 (Alaska 1978) (where we first adopted this sliding scale approach).

387

tion with other associated words and phrases." 2A C. Sands, *Sutherland Statutory Construction*, § 47.16 at 101 (4th ed. 1973); *in accord: United States v. Raynor*, 302 U.S. 540, 58 S.Ct. 353, 82 L.Ed. 413 (1938); *State v. Taylor*, 49 Hawaii 624, 425 P.2d 1014, 1021 (1967); *Heathman v. Giles*, 13 Utah 2d 368, 374 P.2d 839, 840 (1962). Similarly: *Matter of Hutchinson's Estate*, 577 P.2d 1074, 1075 (Alaska 1977) (all sections are to be construed together so that all have meaning and no section conflicts with another); *City of Anchorage v. Scavenius*, 539 P.2d 1169, 1174 (Alaska 1975) (each part of a statute should be construed with every other part or section so as to produce a harmonious whole).

▮ In short, we hold that innocent misrepresentations are not within the ambit of

the term "misrepresentation" as that term is employed in AS 08.88.460(a). In reaching this conclusion we have carefully considered each of the state's arguments pertaining to legislative history, policy considerations, and textual analysis and have found none of them persuasive.[5] Thus we affirm the superior court's construction of AS 08.88.460(a) and (b).[6]

AFFIRMED.

MATTHEWS, J., not participating.

5. We think it appropriate to further note that when the Surety Fund was first established in 1974 and amended in 1980, Alaska did not recognize a cause of action for innocent misrepresentation. In *Bevins v. Ballard*, 655 P.2d 757 (Alaska 1982), this court first recognized a cause of action against a real estate broker for innocent misrepresentation.

6. The amicus has attempted to raise the question of whether on this record any innocent misrepresentation was made. In the procedural context of this case this issue is not properly before us and thus will not be addressed.