704 P.2d 357

**SECURITY PACIFIC FINANCE CORPORATION, Plaintiff-Respondent,**

v.

**Robert M. BISHOP, Defendant-Appellant.**

**No. 15195.**

Court of Appeals of Idaho.

July 31, 1985.

Robert M. Kerr, Jr., Blackfoot, for defendant-appellant.

Brent Roche, Herzog & Roche, Pocatello, for plaintiff-respondent.

WALTERS, Chief Judge.

Plaintiff-respondent, Security Pacific Finance Corporation, hereinafter referred to as Security, loaned defendant-appellant, Robert Bishop, approximately $20,000 which was secured by a deed of trust on Bishop's home. Bishop defaulted on the loan. Non-judicial foreclosure proceedings were commenced under I.C. § 45–1505. The residence was sold at a trustee's sale. Security was the sole bidder. After the sale, Security sought possession of the residence, but Bishop refused to vacate the premises. Security filed suit for possession and Bishop answered, alleging the foreclosure proceeding was defective. Bishop also filed a counterclaim, asserting that Security's loan was usurious. Summary judgment was entered in favor of Security and Bishop's counterclaim was dismissed with prejudice. Bishop has appealed. We reverse the judgment granting possession of the property to Security but we affirm the dismissal with prejudice of Bishop's counterclaim.

Bishop raises several issues on appeal. However, because we conclude the trustee's sale was invalid and the sale must therefore be set aside, we will address only two issues. They are: (1) whether statutory requirements for notice of a sale on foreclosure of a trust deed were complied with in this case; and (2) whether Security's loan to Bishop was usurious, affecting Security's right to collect from Bishop.

It is undisputed that the transactions between Bishop and Security occurred as follows. Security loaned Bishop $20,000 on January 3, 1980. The loan was secured by four automobiles owned by business entities with which Bishop was associated. Payment of the loan was to occur on or before July 3, 1980. The agreement stated the loan was governed by I.C. §§ 28–31–101 through 28–39–103—the former Idaho Consumer Credit Code.[1] The rate of interest charged on Bishop's loan was eighteen percent. The terms of the loan agreement were not satisfied. One payment of $2,892.31 was made, representing five percent of the principal balance and the interest accrued on the initial loan. On November 11, 1980, Bishop and Security entered into a second loan agreement for $20,327.95 to pay off the first loan. In the meantime, the vehicles which secured the first loan had been sold with the business which owned them and were no longer available as collateral. Therefore, Bishop gave Security a deed of trust on his residence in Blackfoot, Idaho. This deed of trust was subordinate to two other deeds of trust already against the same property. The second loan from Security came due on May 11, 1981. Once again the loan was not repaid except for the amount of $2,419.02, representing payment of accrued interest. A third loan was entered into on July 17, 1981, to discharge the second loan. The amount borrowed was $20,559.60 and was subject to a twenty-one percent interest charge. This loan called for 120 monthly payments of $411.05 each. Again the deed of trust on Bishop's property was used as security for the loan. One payment of $1,233.15 was made—the August through

---

1. The Idaho Consumer Credit Code was subsequently repealed in 1983 and was replaced by the Idaho Credit Code, I.C. §§ 28–41–101 through 28–49–107. *See* 1983 Idaho Sess. Laws ch. 119 § 3, p. 264; *and* I.C. § 28–49–106.

October, 1981, payments. No additional payments were forthcoming. On March 17, 1982, Security initiated foreclosure proceedings pursuant to I.C. §§ 45–1505, –1506. At the trustee's sale on August 5, 1982, Security was the sole bidder and purchased the property for the sum of $37,342.83, representing the principal and accrued interest owed on the promissory note, the amount owed to the beneficiaries of the two deeds of trust having priority over Security's deed of trust, and the expenses of foreclosure.

As noted, when Bishop refused to relinquish possession of the property after the trustee's sale, Security filed suit. The district court ordered that Security was entitled to possession. This appeal followed.

I

We turn first to whether the notice requirements upon foreclosure of the deed of trust were satisfied. Our Supreme Court has held that the terms of the trust deed foreclosure statutes must be strictly complied with, in order to satisfy the due process requirements of notice and opportunity to be heard. *Roos v. Belcher*, 79 Idaho 473, 479, 321 P.2d 210, 213 (1958). I.C. § 45–1506(4) details the contents of the notice of sale which must be given, "to inform the recipient, so that he may be advised and act thereon for the protection of his interest." *Id.* at 478, 321 P.2d at 212. The notice must include:

> (a) the names of the grantor, trustee and beneficiary in the trust deed;
> (b) a description of the property covered by the trust deed;
> (c) the book and page of the mortgage records or the recorder's instrument number where the trust deed is recorded;
> (d) the default for which the foreclosure is made;
> (e) the sum owing on the obligation secured by the trust deed; and
> (f) the date, time and place of sale.

In *Roos*, the Supreme Court summarized the statutory provisions for supplying the foregoing notice, as follows:

> [I.C. § 45–1505] requires the recording of the trust deed and any assignment there-

of as well as any change in the office of trustee; the filing for record by the trustee of notice of default; and that a copy of such notice be given by registered or certified mail to any person requesting such notice of record. Section [45–1506] requires that notice of trustee's sale be given following notice of default, at least 120 days before the day fixed for the sale; that such notice be given by registered or certified mail to the last known address of the grantor and to any person requesting notice of record; likewise, to any successor in interest of the grantor where his interest appears of record or where the trustee or beneficiary has actual notice thereof, or where the successor in interest is in possession of the property; to any lessee or other person in possession; also to any person having a lien or interest subsequent to the interest of the trustee, where such lien or interest appears of record, or where the trustee or beneficiary has actual notice thereof.

> ... [I.C. § 45–1506] further provides for personal service of the notice upon occupants of the property and for posting thereof upon the property if it is unoccupied; also, that the notice shall be published in a newspaper of general circulation in each of the counties in which the property is situated, once a week, for four successive weeks, the last publication to be 30 days prior to the date of sale; and affidavits of mailing, of posting, and of publication of notice of sale, are required to be recorded at least 20 days prior to the date of sale. Subsection (12) of [section 45–1506] provides that the grantor, or any successor in interest, or any person having a subordinate lien or encumbrance of record, at any time within 115 days of the recording of the notice of default, may pay the obligation secured by the trust deed, or such part thereof as is in default, and thus redeem the property or cure the default, as the case may be.

79 Idaho at 478, 321 P.2d at 212.

In this case, it is undisputed that notice by certified or registered mail was not de-

livered to Bishop. The notice was placed in the mail but it was returned to the sender, unclaimed. Nor did Bishop receive notice by personal service. A process server visited Bishop's home on at least five occasions on four separate days but did not find Bishop—or any other person—on the premises. Bishop confirmed by deposition that he did not receive the notice of the sale either through the mail or by personal service.

■ When the process server's several attempts to locate someone at Bishop's residence proved unsuccessful, the process server posted a copy of the notice, on the house. Bishop denied ever seeing that notice. The posted notice was not proper under *Roos,* for, as our Supreme Court noted, posting is allowed only where the property is "unoccupied." In this case, the property was "occupied" by Bishop as his residence.

■ Bishop did admit, in a deposition, by answer to interrogatories and in response to a request for admissions, that—prior to the foreclosure sale—he "had actual notice of a foreclosure sale of [his] home," that on or about March 24, 1982, he had "learned that Security Pacific intended to hold a foreclosure sale of [his] home...." The record does not show, however, that Bishop ever received notice including all of the details required by I.C. § 45–1506(4) sufficient to provide him with adequate information "so that he might be advised and act thereon for the protection of his interest." *Roos* at 478, 321 P.2d at 212. Particularly, there was no proof that Bishop received notice of the date, time and place of the scheduled sale, and notice of the sum owing on the debt, so he could timely "pay the obligation secured by the trust deed, or such part thereof as is in default, and thus redeem the property or cure the default, as the case may be." *Id.* In respect to compliance with the trust deed foreclosure statutes, the Arizona Supreme Court has explained:

> Compared to mortgage requirements, the Deed of Trust procedures authorized by statute make it far easier for lenders to forfeit the borrower's interest in the real estate securing a loan, and also abrogate the right of redemption after sale guaranteed under a mortgage foreclosure. [Citation omitted.] A mortgage generally may be foreclosed only by filing a civil action while, under a Deed of Trust, the trustee holds a power of sale permitting him to sell the property out of court with no necessity of judicial action. The Deed of Trust statutes thus strip borrowers of many of the protections available under a mortgage. Therefore, lenders must strictly comply with the Deed of Trust statutes, and the statutes and Deeds of Trust must be strictly construed in favor of the borrower.

*Patton v. First Federal Savings & Loan Ass'n of Phoenix,* 118 Ariz. 473, 578 P.2d 152, 156 (1978).

In the instant case, we find that Bishop did not receive notice in the form and under the procedure required by the trust deed foreclosure statutes. The notice provisions of the statutes were not strictly complied with. We conclude the foreclosure at the trustee's sale was invalid and the sale must be set aside.

## II

We turn next to the issue concerning alleged usury in Security's loan. We decide this issue because it may affect Security's further attempt to foreclose the deed of trust through a subsequent sale after proper notice has been given. In the proceeding below, Bishop counterclaimed alleging the loan contract was usurious under I.C. § 28–22–105, the former usury statute. That statute was a general prohibitive statute allowing thirteen percent as the maximum permissible interest rate for loans which do not come within the Uniform Consumer Credit Code. *See Walker v. Nationwide Financial Corp. of Idaho,* 102 Idaho 266, 629 P.2d 662 (1981). Under the Uniform Consumer Credit Code, the maximum interest rate allowed on consumer loans was eighteen percent per year for loans prior to July 1, 1981, and twenty-one percent per year thereafter. I.C. § 28–33–

201. Bishop argues that none of the loans from Security were consumer loans, because the purpose of the loans was to obtain money for the operation of Bishop's business entities.

■■■ The district court held, however, that the Security loans were governed by the Uniform Consumer Credit Code by agreement of the parties, regardless of whether the loans would otherwise have been consumer loans as defined in the Consumer Credit Code.[2] The district court was correct. The loan agreement between Bishop and Security provided: "The undersigned further agree that regardless of the amount or purpose of this transaction that it shall be governed by Idaho Code section 28–31–101 through 28–39–103." I.C. § 28–33–601 provided:

> The parties to a loan *other than a consumer loan* may agree in a writing signed by the parties that the loan is subject to the provisions of this act applying to consumer loans. *If the parties so agree, the loan is a consumer loan for the purposes of this act.* [Emphasis added.]

Therefore, despite the definition of consumer loan in I.C. § 28–33–104, the language of the loan agreement mandates I.C. §§ 28–31–101 through 28–39–103 apply. The maximum interest rates allowed were eighteen percent per year for loans prior to July 1, 1981, and twenty-one percent thereafter. I.C. § 28–33–201. Because the loan is considered a consumer loan by agreement, I.C. § 28–22–105 is inapplicable. Therefore, we uphold the district court's ruling that the interest rate of twenty-one percent was proper. We affirm the district court's dismissal with prejudice of Bishop's counterclaim.

2. I.C. § 28–33–104 defines a consumer loan as follows:

[A] "consumer loan" is a loan made by a person regularly engaged in the business of making loans in which
(1) The debtor is a person other than an organization;
(2) The debt is incurred primarily for a personal, family, household, or agricultural purpose;

The district court judgment giving Security possession of Bishop's real property is vacated. Security's complaint is dismissed because of failure to strictly comply with the notice provisions of I.C. § 45–1506. No attorney fees on appeal. Costs to appellant Bishop.

SWANSTROM, J., concurs.

BURNETT, Judge, dissenting in part.

I respectfully disagree with Part I of the Court's opinion, holding that the trustee's sale must be set aside. Idaho Code § 45–1506(2) provides that notice of the trustee's sale "shall be given by registered or certified mail to the last known address of ... [t]he grantor in the trust deed...." Here, it is undisputed that the requisite notice was timely sent by certified mail to the grantor, Robert Bishop, at his residence address and at his post office box, in Blackfoot, Idaho. At Bishop's specific request, the Blackfoot Post Office followed a general practice of placing in his post office box all mail, whether addressed to the box or to the residence. Accordingly, when the post office received the two envelopes containing notices of the trustee's sale, a notice of arrival of certified mail was placed in Bishop's box. When the mail was not claimed within five days, a second such notice was placed in the box. When the mail still was not claimed, the envelopes were marked "unclaimed" and returned to the sender approximately eighteen days after the first notice had been placed in the box. Bishop later acknowledged, in response to a Request for Admissions, that he had received notice of the arrival of certified mail but that he "just failed to pick mail up at the window."

(3) Either the debt is payable in installments or a loan finance charge is made; and
(4) The principal does not exceed $25,000 [$45,000] or the debt is secured by an interest in land. The amount of $25,000 is subject to change pursuant to the provisions on adjustment of dollar amount....

The majority today holds that Bishop "did not receive notice in the form and under the procedure required by the trust deed foreclosure statutes." But in my view, I.C. § 45–1506(2) does not allow a grantor to frustrate foreclosure proceedings simply by failing to claim his certified mail. The statute does not require proof that the grantor actually received the mailed notice; it requires only that the notice be sent "by registered or certified mail to the last known address...." Although the majority relies upon *Roos v. Belcher*, 79 Idaho 473, 321 P.2d 210 (1958), that case merely stands for the proposition that notice sufficient under the trust deed statutes is also sufficient to meet constitutional due process requirements. *Roos* does not impose any notice requirement beyond that contained in the statutes themselves.

Moreover, as the majority acknowledges, this is not a case where the grantor was wholly uninformed of the pending sale. Bishop admitted that on or about March 24, 1982, he became aware that his property would be sold pursuant to the deed of trust securing his loan from Security Finance. The sale occurred on August 5, 1982. The record does not disclose that Bishop cured the default or took any legal steps to test the validity of the sale proceedings during the interim.

The majority further suggests that Bishop, as an "occupant" of the subject property, also was entitled to personal service of the notice of default, pursuant to I.C. § 45–1506(5). That section does indeed require occupants to be served notice "in the manner in which a summons is served." But it provides that "if the real property be vacant then such notice shall be posted in a conspicuous place on the said premises." The record contains an affidavit by a private process server, stating that he attempted unsuccessfully on six different occasions, including several days and a weekend, to serve Bishop at the residence. Finding no one at home on any of these occasions, the process server, according to his affidavit, posted the notice of sale on the front door of the house. Bishop denied seeing the posted notice.

The district court, noting that the process server's affidavit and Bishop's denial framed a genuine issue of material fact, properly refused to rule on whether Bishop had been adequately served as an "occupant." In contrast, the majority perceives the issue as one of law, holding that a posted notice would be inadequate under the statute because the property was not "vacant." I do not know what definition of vacancy the majority has employed, but I would hold, if it were necessary to do so, that when no one is found at home on six different occasions, the property may be deemed "vacant."

More fundamentally, however, I believe it is unnecessary to determine whether Bishop was adequately served as an "occupant" in addition to receiving notice as a "grantor." Idaho Code § 45–1508 provides, in pertinent part, as follows:

A sale made by a trustee under this act shall foreclose and terminate all interest in the property covered by the trust deed of all persons to whom notice is given under subsection (2) of section 45–1505 [which, due to a clerical error, should read section 45–1506].... The failure to give notice to any of such persons shall not affect the validity of the sale as to persons so notified.

As noted above, proper notice was given to Bishop as a "grantor" in the manner provided by I.C. § 45–1506(2). Consequently, any defect in the notice given to other persons under that subsection, or to him as an "occupant" under I.C. § 45–1506(5), would not affect the validity of the sale. Although in some circumstances failure to give an "occupant" proper notice of sale might affect the subsequent relationship between the purchaser and the "occupant," I do not believe that such circumstances are presented by the instant case.

I would affirm the summary judgment of the district court in its entirety.