**Fred ROSENBERG and Rita Rosenberg, Appellants,**

v.

**Alvin G. SMIDT and Janice M. Smidt, Appellees.**

**No. S–747.**

Supreme Court of Alaska.

Nov. 7, 1986.

Rehearing Denied Jan. 9, 1987.

Kenneth P. Jacobus, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellants.

R.J. Christie and Lynette I. Hotchkiss, Kay, Christie, Saville & Coffey, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

Fred Rosenberg and Rita Rosenberg appeal from a partial summary judgment entered pursuant to Civil Rule 54(b). The judgment divested them of title to a parcel of real property and revested it in Alvin Smidt and Janice Smidt. Since the trial court's decision is based on stipulated facts, the appeal presents only legal issues. The parties dispute whether AS 34.20.-070(c) requires a trustee to attempt to discover the current address of a record interest holder before proceeding with a trustee's sale of encumbered real property. The parties also dispute whether AS 34.20.-090(c) protects the Rosenbergs as bona fide purchasers without notice of possible defects in the foreclosure sale notifications. We affirm.

## I. FACTS AND PROCEEDINGS

In December 1973, Rodney Spendlove and William Johnson [1] sold real property to Alvin Smidt and Janice Smidt (Smidts). At the time of the sale, a first deed of trust executed by Spendlove and Johnson encumbered the property.[2] The Smidts executed a second deed of trust on the property in favor of Spendlove and Johnson,[3] securing the balance of the purchase price, $6,200. Alaska Title Guaranty Company (Alaska Title) was designated trustee on both deeds of trust.

The Smidts made all of the payments due on their note through May 1981. Nevertheless, by early 1980 Spendlove and Johnson had defaulted on the payments due under the note secured by the first deed of trust. At the beneficiaries' request, Alaska Title began nonjudicial foreclosure proceedings in June, 1980.

As required by AS 34.20.070(c),[4] Alaska Title sent copies of the notice of default to

1. While both are defendants below, neither are parties to this appeal. Apparently, no final judgment has yet been entered against them.

2. The beneficiaries of this first trust deed are not parties to this dispute.

3. In this trust deed, the Smidts requested Alaska Title to send notices of default (on *that* deed, presumably) to the address listed on the deed. Upon the default in the first trust deed, as requested, Alaska Title did send the notice to the address listed on the second deed.

4. AS 34.20.070(c) provides:

Within 10 days after recording the notice of default, the trustee shall mail a copy of the notice by certified mail to *the last known address* of each of the following persons or their legal representatives (1) the grantor in the trust deed; (2) *the successor in interest to the grantor whose interest appears of record* or of whose interest the trustee or the beneficiary has actual notice, or who is in possession of the property; (3) any other person in possession of or occupying the property; (4) any person having a lien or interest subse-

the Smidts, Johnson, and Spendlove. Alaska Title used the address for the Smidts listed on the 1973 second deed of trust. The Smidts, however, had moved from that address—a mobile home park—in 1975. The certified letters sent to the Smidts were returned to Alaska Title marked "unclaimed." Alaska Title published notice of the sale in an Anchorage newspaper. The Smidts, however, did not get actual notice of the sale.

From the summer of 1975 through the summer of 1980, the Smidts resided and received mail at their home on Old Muldoon Road in Anchorage. Alaska Title could have discovered the Smidts' address by contacting either the Anchorage Municipality Real Property Taxation Department, any of several utility companies, or the State's Department of Motor Vehicles. The Anchorage phone directory listed Alvin Smidt's phone number, but not address. Polk's Greater Anchorage Area Directory listed the Smidt's address in 1979, but not in 1980.

In October 1980, Fred Rosenberg and Rita Rosenberg (Rosenbergs) purchased the property at a public foreclosure sale held by Alaska Title. Although the property was then worth more than $20,000, they bid only $5,626.25. The Smidts, meanwhile, continued making payments to Spendlove and Johnson, ignorant of the sale until April 1981.

The Smidts sued the Rosenbergs, Alaska Title, Spendlove, and Johnson to set aside the sale.[5] The Smidts moved for partial summary judgment. The trial court ruled that "principles of equity" require a trustee to "take reasonable steps to ascertain the current address of the trustor or his assignee." The trial court noted that the mobility of Alaska's youthful population compelled such a duty. It further noted that while professional trustees know of the need to be informed of address changes, the deed of trust here imposed no such requirement on the Smidts. Judgement was entered pursuant to Civil Rule 54(b),[6] and the Rosenbergs appealed.

## II. DILIGENT INQUIRY UNDER AS 34.20.070(c).

AS 34.20.070(c)[7] required Alaska Title to mail a notice of Spendlove and Johnson's default to the "last known address" of their assignees, the Smidts. At the time Alaska Title mailed its notice, it had actual knowledge only of the address used by the Smidts seven years earlier. The parties dispute whether Alaska Title should have made some effort to locate the Smidts after it received the returned certified letter marked "unclaimed." Imposition of a due diligence requirement would announce a protection neither required nor precluded by the statute.

No Alaska cases have construed this provision of AS 34.20.070(c). Decisions from other jurisdictions interpreting similar "last known address" clauses provide some insight, but the statutory schemes in which such clauses occur differ so greatly that no case adequately disposes of this question.[8]

quent to the interest of the trustee in the trust deed, where the lien or interest appears of record or where the trustee or the beneficiary has actual notice of the lien or interest. The notice may be delivered personally instead of by mail.
(Emphasis added).

5. The Rosenbergs answered and moved to dismiss. The trial court denied the motion. The Rosenbergs then filed a petition for review in this court. This court declined to review the issues pending final judgment.

6. Civil Rule 54(b) provides in part:
When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims of the parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.
Here, the trial court made an express determination and direction.

7. *See supra* n. 4.

8. The parties do not here dispute the constitutionality of the notice provision. They had disputed below whether due process required better notice than the Smidts received. The trial court originally invalidated the sale on due process grounds. It then reversed its due process

"Last known address" clauses appear most frequently in tax statutes, service of process rules, and trust deed statutes. For instance, Section 6212(b) of the Internal Revenue Code, 26 U.S.C. § 6212(b) (1981), requires the Commissioner of Internal Revenue to mail notice of a tax deficiency to the taxpayer's "last known address." The federal courts require the Commissioner to use reasonable diligence in ascertaining the taxpayer's current address. *See* Annot., 58 A.L.R.Fed. 548, 554–56 (1982). At the same time, the commissioner may rely on "the address appearing on a taxpayer's return as the last known in the absence of clear and concise notification from the taxpayer directing the Commissioner to use a different address." *Alta Sierra Vista, Inc. v. Commissioner*, 62 T.C. 367, 374 (1974), *aff'd mem.*, 538 F.2d 334 (9th Cir. 1976).

Thus, while the Internal Revenue Service (IRS) must be diligent to send notices properly, the taxpayer must clearly notify the IRS of any changes. Only when the IRS fails to respond after the taxpayer has communicated changed addresses will the IRS have breached its duty of due diligence. *See, e.g., Crum v. Commissioner*, 635 F.2d 895, 899–900 (D.C.Cir.1980). Absent communication by the taxpayer, the IRS seems under no duty to mail notices to any address other than the one last used by the taxpayer. The tax statutes, however, contemplate at least yearly communications between government and taxpayer.

Substitute service of process rules occasionally allow a party to mail process to defendant's "last known address." *See Shanklin v. Bender*, 283 A.2d 651, 653–54 (D.C.1971) (construing Ill.Rev.Stat. ch. 95½, § 10–301(b) (1967–70)) (service of process on nonresident motor vehicle operator);

*Feinstein v. Bergner*, 48 N.Y.2d 234, 422 N.Y.S.2d 356, 397 N.E.2d 1161 (1979) (construing N.Y.Civ.Prac.R. 308(4)) (substitute mail service on defendant's "last known residence" and nail service on "dwelling place" and "usual place of abode"); *Volmer v. Hoel*, 87 Ohio App. 199, 93 N.E.2d 416 (1950) (construing Gen. Code § 6308–2, replaced by Ohio Rev. Code Ann. § 2703.20 (1981)) (service on nonresident motor vehicle operator); *Waddell v. Mamat*, 271 Wis. 176, 72 N.W.2d 763, 766 (1955) (construing § 85.05(3) stats., now Wis.Stat.Ann. § 345.09(2) (West 1971)) (nonresident motor vehicle operator); *see also* Ohio Civ.R. 4.4 (1982). *Volmer* appears to require due diligence. 93 N.E.2d at 420. *Shanklin* interpreted Illinois law as requiring reasonable diligence. 283 A.2d at 653. *Waddell* merely paraphrased *Wuchter v. Pizzutti*, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928), and stated that "[t]he last known address is that one most likely to give the party to be served notice." 72 N.W.2d at 766.

We recognize that, like cases construing the tax statute, these holdings involve statutory schemes with concerns somewhat different from the deed of trust sale. When service of process is involved, federal due process requires notice reasonably calculated to apprise the parties of the pendency of an action. *See, e.g., Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950). Moreover, some states require proof of due diligence at attempted personal service *before* allowing substitute service. *See, e.g.,* N.Y.Civ.Prac.R. 308(4) (West 1972). Thus the federal due process concerns raised by tax and process laws require some showing of due diligence. These *federal* due process rights are absent from a deed of trust foreclosure sale.

ruling and decided instead upon equitable grounds.

The constitutionality of notice of deed of trust sale provisions has been litigated frequently. *See* G. Osborne, G. Nelson & D. Whitman, Real Estate Finance Law §§ 7.23—7.30 (1979) (hereinafter cited as Real Estate Finance Law); *see also* Note, *The Constitutionality of Power of Sale Foreclosure in Alaska*, 6 UCLA–Alaska L. Rev. 90 (1976). The trend, however, is to find that

nonjudicial sales lack sufficient state action to trigger the federal due process protections. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (warehouseman's private sale of goods under UCC 7–210 involved no state action); *Garfinkle v. Superior Court*, 21 Cal.3d 268, 146 Cal.Rptr. 208, 578 P.2d 925 (1978) (deed of trust foreclosure sale lacked state action).

Furthermore, unlike tax and process cases, deed of trust sales involve title to real property. Courts have traditionally favored the free and easy alienability of real property. Deed of trust provisions encourage ready transfer in two ways. By assuring creditors a speedy, inexpensive and uncomplicated remedy in the event of default, deeds of trust allow lenders to loan more cheaply the funds necessary to purchase the property initially. *See* 10 G. Thompson, Commentaries on the Modern Law of Real Property, § 5175 at 204–05 (1957). Thus, deeds of trust encourage debtors to buy by assuring creditors of easy resale. "[W]here it is in common use, power of sale foreclosure has provided an effective foreclosure remedy with a cost in time and money substantially lower than that of its judicial foreclosure counterpart." Real Estate Finance Law, § 7.19 at 477 (footnote omitted).

The Rosenbergs argue that a requirement of due diligence in a provision of notice of default would increase the costs of financing real property transfers. Beyond the administrative costs of searching for absent interested parties, creditors would bear the increased risk of attendant costs of litigation over the trustee's compliance. *See id.* Ultimately, creditors will pass on these costs to future borrowers. Thus, all debtors would be forced to pay the higher costs of protecting those debtors who invest and then move without advising the trustee of their new address. The Rosenbergs, however, do not quantify these increased costs.

Review of the law of other jurisdictions reveals numerous "last known address" statutes governing notice of deed of trust sales.[9]  *See, e.g.,* Cal.Civ.Code § 2924b(2)(a)-(c) (West 1974 & Supp. 1985);

D.C. Code Ann. § 45–715(b) (1981) (written notice by certified mail with return receipt requested to the last known address); Idaho Code § 45–1506(2) (1977) (notice by registered or certified mail to last known address); Or.Rev.Stat. § 86.740 (1983) (mail notice by both first class and certified mail with return receipt to the last known address); *compare* Ariz.Rev.Stat.Ann. § 33–809(B)(2) (Supp.1985) (trustee uses address on recorded document unless address missing); Tex.Prop.Code Ann. § 51.002(b)(3) (Vernon 1984) (notice sent to last known address appearing in the records of the holder of the debt); Wash.Rev.Code Ann. § 61.24.040(b) (Supp.1985) (notice sent to address in recorded instrument or otherwise known to trustee). The few reported decisions reveal no holding imposing a due diligence requirement.[10]  A recent California decision specifically rejected a due diligence requirement. In *I.E. Associates v. Safeco Title Insurance Co.,* 39 Cal.3d 281, 216 Cal.Rptr. 438, 702 P.2d 596 (1985) the California Supreme Court construed Civil Code 2924b. This statute explicitly defines "last known address" as "the last business or residence actually known by the ... person authorized to record the notice of default." Cal.Civ.Code § 2924b(2)(c). The section also requires the beneficiary to tell the trustee of the last address actually known by the beneficiary. Cal.Civ.Code § 2924b(2)(c). Faced with such strong evidence of a limitation to knowledge "actually" known, the court stated that the section imposed no due diligence requirement upon trustees. 216 Cal.Rptr. at 440, 702 P.2d at 598.

The California statute's explicit definition of "last known address" distinguishes it from AS 34.20.070(c). Further, unlike California, Alaska imposes no duty on the ben-

---

9. Some states require *no* mailed notice. *See, e.g.,* S.D. Codified Laws § 21–48–6 (1979) (notice by publication alone suffices); Utah Code Ann. § 57–1–25 (Supp.1983) (notice by publication and posting notice on property to be sold, as well as three other public places in the city where property is to be sold).

10. In *Security Pacific Finance Corp. v. Bishop,* 109 Idaho 25, 704 P.2d 357 (1985), the trustee

sent a notice by certified mail to the debtor. The opinion does not clarify whether the letter was correctly addressed. The notice was returned unclaimed. *Id.* at 359–60. The Idaho court strictly construed its notice provisions and found inadequate compliance. *Id.* at 360. It invalidated the sale, but did not explicitly create a due diligence requirement. *Id.*

eficiary of a trust deed to notify the trustee of an actually known last address of an interested party.[11] We therefore decline to follow the reasoning of *I.E., Associates.*

A tension exists between free and easy alienability of real property and notice to persons whose interest in real property is to be affected by governmental or private action. Yet it is not so great as to preclude a requirement of due diligence in attempting to get notice to those who will be affected by that action. As this case demonstrates vividly, diligent inquiry by the trustee would readily have provided Smidts' actual address.

On one hand,

> [w]hile noncompliance with the statutory provisions regarding foreclosure by the power under a mortgage or trust deed is not to be favored, the remedy of setting aside the sale will be applied only in cases which reach unjust extremes.

*Semlek v. National Bank of Alaska,* 458 P.2d 1003, 1006 (Alaska 1969). On the other, "equity abhors a forfeiture and will seize upon slight circumstances to relieve a party therefrom." *Jameson v. Wurtz,* 396 P.2d 68, 74 (Alaska 1964) (footnote omitted).

We conclude that the last known address is that address most likely to give the affected party notice. The trustee is obligated to exercise due diligence to determine that address. Failure to impose such a requirement would not balance adequately the competing interests involved.

**11.** The California court noted that the trustor should learn of the sale through posted notice on the property, *Id.* 216 Cal.Rptr. at 443, 702 P.2d at 601 n. 6, and that only passive investors, uninvolved with daily activity on the property, risk missing notice, *Id.* 216 Cal.Rptr. at 443, 702 P.2d at 601 n. 7.

Like California, Alaska requires both posting and publication before a nonjudicial sale. *See* AS 34.20.080(a)(2), AS 09.35.140. However, there is little basis for asserting that the only persons not likely to get notice under Alaska's statutory scheme are "passive investors" of undeveloped property who do not list a permanent agent for service of notices upon their original

## III. DOES AS 34.20.090(c) PROTECT THE ROSENBERGS AS BONA FIDE PURCHASERS?

Under AS 34.20.090(c),[12] recitals in the foreclosure sale deed that the trustee complied with notice provisions become conclusive evidence of compliance in favor of bona fide purchasers (bfp's). The deed the Rosenbergs received stated:

> All other requirements of law regarding the mailing, publication and personal delivery of copies of the Notice of Default and all other notices have been complied with, and said Notice of Sale was publicly posted as required by law and published in the Anchorage Times on August 26 and September 2, 9, and 16, 1980.

The parties dispute whether this section barred the Smidts from overturning the sale on the basis of lack of notice. Although the Rosenbergs directed the trial court to this statute, the judgment makes no mention of it.

The Smidts make three arguments to avoid the statute. First, the Smidts claim that the statute does not apply to void sales. They correctly state the general rule that "[t]he doctrine of good faith purchaser for value without notice does not apply to a purchaser at a void foreclosure sale." *Henke v. First Southern Properties, Inc.,* 586 S.W.2d 617, 620 (Tex.Civ.App.1979). They misapply the rule, however, to the sale by Alaska Title. They fail to distinguish "void" from "voidable" sales. *See Real Estate Finance Law,* § 7.20 at 477–78. Only substantial defects

execution of the recorded instruments. Further, it should not make a difference that the affected interest is that of "passive investors."

**12.** AS 34.20.090(c) provides:

A recital of compliance with all requirements of law regarding the mailing or personal delivery of copies of notices of default in the deed executed under a power of sale is prima facie evidence of compliance with the requirements. *The recital is conclusive evidence of compliance with the requirements in favor of a bona fide purchaser or encumbrancer for value and without notice.* (Emphasis added).

such as the lack of a substantive basis to foreclose in the first place will make a sale void. *Id.* at 477 & § 7.21 at 489–90. *Henke* itself illustrates the most common basis for finding a void sale: the absence of default. 586 S.W.2d at 620. Where a defect in a foreclosure sale makes it merely voidable, however, sale to a bfp cuts off the trustor's ability to set aside the sale. *See Swindell v. Overton,* 310 N.C. 707, 314 S.E.2d 512, 517 (1984); *Real Estate Finance Law,* § 7.21 at 489. Here, the alleged defect went not to the trustee's right to proceed with foreclosure but only to "the mechanics of exercising the power." *Id.* at 490. Thus, if the Rosenbergs were bfp's, the Smidts cannot set aside what is not a void, but a voidable, sale. However, as we hereinafter conclude, the Rosenbergs are not bfp's. The sale is therefore voidable.

Second, the Smidts challenge the Rosenberg's status as "bfp's without notice." No case defines this phrase for purposes of AS 34.20.090(c). Cases generally interpret the phrase to apply to one who lacks actual, constructive (*i.e.,* from the land records) or inquiry notice. *See, e.g., Swindell,* 314 S.E.2d at 517; *see also Sabo v. Horvath,* 559 P.2d 1038, 1043 (Alaska 1976). No one here contends that the Rosenbergs had actual or constructive notice of any defects in the notice sent to the Smidts. To bar their status as bfp's, the Smidts must hold the Rosenbergs to inquiry notice of the alleged defects.

This court explained inquiry notice in *Modrok v. Marshall,* 523 P.2d 172 (Alaska 1974).

It is a settled rule of property that circumstances ... which suggest outstanding equities in third parties, impose a duty upon the purchaser to make a reasonable investigation into the existence of a claim. Given suspicious facts,

the status of bona fide purchaser turns upon whether there was a prudent inquiry into their import.

*Id.* at 174 (footnote omitted). In other words, "the defects are not such that a person attending the sale exercising reasonable care would have been aware of the defect." *Real Estate Finance Law,* at 478.

The facts stipulated below suggest that the Rosenbergs at most were chargeable with knowledge of the Smidts' status as assignees of Spendlove and Johnson. The facts do not reveal whether anyone else bid at the auction. On one hand, the Rosenbergs could reasonably believe that the Smidts were unable to cure Spendlove and Johnson's default or had made other arrangements with the defaulting debtors. On the other, it is unreasonable to believe that the Smidts would do nothing to protect their interest.

Ultimately, to hold that the interested party's absence from a foreclosure sale imposes a duty upon purchasers to investigate the notice given would gut AS 34.20.-090(c). No one would ever be a "bona fide purchaser without [inquiry] notice."[13] By requiring would-be purchasers to "investigate or buy a lawsuit," such a holding would further increase the costs and delays accompanying deed of trust sales.

However, even if the Rosenbergs were not put on inquiry notice by the Smidts' absence from the sale, they may be charged with such notice if the deed contains no more than mere recitals that the trustee has complied with statutory notice requirements.

▉ The Smidts argue that AS 34.20.-090(c) contemplates recitals of fact, not conclusions of law. They contend that interpreting "recital" to mean a detailed recitation of the steps taken to notify trustors

**13.** Compare bona fide purchasers under the UCC. Section 9–504(4) (AS 45.09.504(d)(1)) protects purchasers at public foreclosure sales of secured personal property. This section requires a bfp to have no "knowledge" of any defects in the sale. *See* Coogan, Hogan, Vogts & McDonnell, *Secured Transactions under the Uni-* *form Commercial Code,* 1A *Bender's 1A UCC Serv. (MB),* § 8.04[2][c][i] at 8–96 (1985) ("[P]urchaser at the public sale ... is put under no duty to inquire into the circumstances of the sale." (footnote omitted)). Section 1–201(25) (AS 45.01.201(25)) defines "knowledge" as actual knowledge.

or their successors will prevent problems such as in this case. A recitation of the "facts" of notice, they argue, would charge the Rosenbergs with inquiry notice of the Smidts' plight and thus prevent the Rosenbergs from becoming bfp's. We agree with each of these points.

Several states have statutory presumptions similar to Alaska's. *See, e.g.,* Cal.Civ. Code § 2924 (West 1974); Or.Rev.Stat. § 86.780 (1983); Utah Code Ann. § 57–1–28 (1) (1985). We have found no cases which hold that such statutes either are or are not satisfied by a bare statement that the law was complied with, as distinguished from a factual recitation of the steps which were taken to comply with the law.[14]

According to one commentator on Oregon's statute,[15]

if the trustee recites in the deed it carried out notice procedures required by the statutes, such recitals provide absolute protection to a bona fide purchaser relying upon them.

Randolph, Jr., *Updating the Oregon Installment Land Contract,* 15 Willamette L.J. 181 at 200 n. 64 (1979). Oregon explicitly lists the required contents of recitals. Or.Rev.State. 86.775 states:

The trustee's deed to the purchaser at the trustee's sale shall contain, in addition to a description of the property conveyed, a recital of *the facts concerning* the default, *the notice given,* the conduct of the sale and the receipt of the purchase money from the purchaser.

(Emphasis added). Alaska law also specifies that the trustee's "deed shall recite ... the mailing or delivery of the copies of the notice of default...."[16] though it is less clear than the Oregon statute as to whether the recital should be factual or conclusory.

We are persuaded that what is required is a recital of fact specifying what the trustee has done, not a mere conclusory statement that the trustee has complied with the law. There are several reasons which lead us to this conclusion.

---

**14.** There is dictum in the plurality opinion in *Blodgett v. Martsch,* 590 P.2d 298, 303 (Utah 1978) suggesting that a mere statement of compliance will suffice. However, the court did not so hold; the purchaser in that case was found not to be a bfp. Further, there is no discussion of the issue of the level of detail necessary to comply with the statute. *Pierson v. Fischer,* 131 Cal.App.2d 208, 280 P.2d 491, 497 (1955) is relied on by the Rosenbergs. That case is based on language of a deed of trust, not a statute similar to AS 34.20.090(c). Further, the deed of trust in *Pierson* specifically stated that the recital could be "in general terms, or as conclusions of law ..." a broad grant which is absent in our statute. Similarly, the cases referred to in the dissenting opinion, *Triano v. First Am. Title Ins. Co.,* 131 Ariz. 581, 643 P.2d 26, 28 (Ariz.App. 1982) and *Wolfe v. Lipsey,* 163 Cal.App.3d 633, 209 Cal.Rptr. 801, 805 (1985) do not speak to the issue of what type of recital is called for. *Triano* does not set forth what was stated in the trustee's deed; it merely holds that in the absence of a showing that the law in fact was not complied with the issuance of the deed was conclusive. *Wolfe* likewise does not state what was set forth in the trustee's deed. The court of appeals in *Wolfe* affirmed the action of the trial court setting aside the trustee's sale, reasoning that since the trial court did not apply the conclusive presumption of the statute it must have found that the purchaser was not a bfp, al-

though that conclusion was not stated. The court in *Wolfe* also referred to the California Supreme Court case, *Garfinkle v. Superior Court of Contra Costa County,* 21 Cal.3d 268, 146 Cal. Rptr. 208, 215, 578 P.2d 925, 932 (1978) which in footnote 16 suggests that the validity of the conclusive presumption clause in California's statute is an open question.

**15.** Or.Rev.State. § 86.780 reads:

When the trustee's deed is recorded in the deed records of the county or counties where the property described in the deed is situated, the recitals contained in the deed and in the affidavits required under ORS 86.750(3) shall be prima facie evidence in any court of the truth of the matters set forth herein, but the recitals shall be conclusive in favor of a purchaser for value in good faith relying upon them.

**16.** AS 34.20.080(c) provides:

The deed shall recite the date and the book and page of the recording of default, and the mailing or delivery of the copies of the notice of default, the true consideration for the conveyance, the time and place of the publication of notice of sale, and the time, place and manner of sale, and refer to the deed of trust by reference to the page, volume and place of record.

The fact that .080(c) [17] explicitly calls for factual details in the deed recital concerning recording, price, publication, and sale suggests that facts are also called for concerning mailing or delivery.[18] Further, requiring a factual recital tends to assure that the requirements of law concerning mailing or delivery are complied with. A conclusory statement can be a matter placed in a form, or a programmed deed, and will not require the trustee to review what was actually done. A factual recital does require review in each case. While a factual recital requirement does not protect against fraud in all cases, it does tend to prevent the more common failings of oversight and neglect. A conclusory recital, on the other hand, accomplishes little or nothing.

The dissenting opinion states that the purpose of 34.20.090(c) is to provide extra protection to purchasers at foreclosure sales and to enhance the reliability of their titles. While that is one purpose of the act of which 34.20.090(c) is a part, it is by no means its only purpose. The enactment in question, ch. 116, SLA 1957, added the mailing and delivery requirements now set out in .070(c) (previous law had only required publication, ACLA 1949 § 22–5–2), mandated that the deed recite the mailing or delivery of notice, .080(c), and stated the evidentiary effect of such a recital, .090(c). Thus, the purpose of the act was not only to protect the foreclosure sale purchaser, but to require that effective notice of default and sale be given parties in interest,

and to provide a self-effecting method of assuring that such notice is given. Construing the recital requirements in .080(c) and .090(c) to call only for formal conclusions does not accomplish the purpose of assuring mailing or delivery; a construction which holds that a recital of facts is required is consistent with all of the purposes of the statute.

Moreover, the use of the word "recital" suggests that facts rather than conclusions are what the statute calls for. The ordinary meaning of "recital" is a formal statement of relevant facts.[19]

For these reasons we conclude that AS 34.20.080(c) and .090(c) require a recital of facts specifying what the trustee has done regarding mailing or delivery. Since there was no such recital in this case the Rosenbergs were on inquiry notice of a potential voidable defect. They cannot claim bfp status or the protection of .090(c).

AFFIRMED.

MOORE, Justice, with whom RABINOWITZ, Chief Justice, joins, dissenting in part.

I dissent from the majority's conclusion that the Rosenbergs are not Bona Fide Purchasers (BFP). In my view the Rosenbergs' status as BFPs bars the Smidts from overturning the foreclosure sale, and limits their remedy to seeking damages from Spendlove, Johnson and/or the trustee, Alaska Title Guaranty Company. Protecting the Rosenbergs' title to the proper-

---

17. *See* note 16 *supra.*

18. The principle of statutory construction which is applicable here is that of associated words—words are known by the company they keep. "A widely applied tenet of statutory interpretation is that if 'the legislative intent or general meaning of a statute is not clear, the meaning of doubtful words may be determined by reference to their association with other associated words and phrases.'" State, *Real Estate Commission v. Johnston,* 682 P.2d 383, 386–87 (Alaska 1984). Thus, since .080(c) calls for facts concerning other subjects used in a series with mailing or delivery, it is logical to conclude that the statute calls for facts concerning mailing or delivery.

19. Webster's Third New International Dictionary:
"Recital 1: the formal statement or setting forth of some relevant matter of fact in a deed or legal document (as to explain the reasons for a transaction, to evidence the existence of facts, or to introduce a positive allegation in pleading). 2. a: a particularized account....";
Black's Law Dictionary 1435 (Rev.4th ed.1968): "Recital: The formal statement or setting forth of some matter of fact, in any deed or writing, in order to explain the reasons upon which the transaction is founded ... The formal preliminary statement in a deed or other instrument, of such deeds, agreements, or matters of fact as are necesary to explain the reasons upon which the transaction is founded."

ty is compelled by important public policy considerations as well as by the express language of AS 34.20.090(c).

The majority correctly notes that where, as here, a defect in the foreclosure sale makes it merely voidable, the sale to a BFP will completely bar the debtor's ability to set aside the sale. G. Nelson & D. Whitman, *Real Estate Finance Law* § 7.20 (2d ed. 1985); Annot., 73 A.L.R. 612, 638 ("It seems well settled that mere defects or irregularities in foreclosure proceedings do not affect the title acquired by a bona fide purchaser at the sale thereunder.") This makes perfect sense, as grave consequences would result if the rule were otherwise. For example, if innocent purchasers at foreclosure sales had to face the risk that debtors could easily set aside the sales, then it takes little imagination to realize that participation at foreclosure sales would be significantly and unacceptably chilled. As the court stated in *In re Alsop*, 14 B.R. 982, 987 (Bankr. Alaska 1981), *aff'd* 22 B.R. 1017 (D. Alaska 1982):

> The specter of this uncertainty of title will severely inhibit participation at the foreclosure sale by anyone other than the original creditor, thus depressing bid prices to the general detriment of debtors. [This] would further reduce the willingness of creditors to lend on the security of a deed of trust, to the general detriment of borrowers.

*Id.* (Citation omitted.)

Furthermore, the innocent purchaser, having absolutely nothing to do with the legal relationship between the trustee and the debtor, should not be forced to bear any loss caused to the debtor by the trustee's failure to diligently protect the debtor's interests.

> As between the mortgagor and the purchaser, the former rather than the latter should suffer the loss, because by granting to the mortgagee the right to sell, the mortgagor put it in the mortgagee's power to work the injury through the execution of that power.

*Dugan v. Manchester Federal Savings & Loan Association*, 92 N.H. 44, 23 A.2d 873, 876 (1942). Here, where the injury was caused by the trustee's failure to discover the debtor's new address, it should be the debtor, not the innocent purchaser, who should lose title to the property. It is the debtor, not the purchaser, who can most easily notify the trustee of the new address. As between two innocent parties, the loss should fall on the one in the best position to have avoided that loss.

There is no doubt that Alaska follows the universal rule of refusing to set aside a voidable foreclosure sale when title has passed to a BFP. In fact, Alaska goes even further, and even in the absence of a BFP this court will remain very reluctant to set aside a foreclosure sale except in the most unusual circumstances. For example, in *McHugh v. Church*, 583 P.2d 210 (Alaska 1978), a case not involving purchase by a BFP, this court stated:

> While noncompliance with the statutory provisions regarding foreclosure by the power under a mortgage or trust deed is not to be favored, the remedy of setting aside the sale will be applied only in cases which reach unjust extremes.

583 P.2d 210, 216 (Alaska 1978) (footnote omitted, *quoting Semlek v. National Bank of Alaska*, 458 P.2d 1003, 1006 (Alaska 1969)). *See also Harris v. Alaska Title Guaranty Co.*, 510 P.2d 501, 505 (Alaska 1973). In other words, in Alaska, a voidable foreclosure sale will never be set aside if a BFP has title, and even where no BFP is involved, the sale will be overturned only if necessary to avoid extreme results. *See* Note, *The Constitutionality of Power of Sale Foreclosure in Alaska*, 6 U.C.L.A.—Alaska L.Rev. 90, 112–13 (1976). Because the Rosenbergs are undoubtedly BFPs, I must disagree with the majority's decision to forfeit the Rosenbergs' title to the property by setting aside the foreclosure sale.

In the context of foreclosure sales, there are three requirements for BFP status. If the sale purchaser has paid value and is unrelated to the mortgagee, it would seem that he should take free of voidable defects if: (a) he has no actual knowledge of the defects; (b) he is not on

reasonable notice from recorded instruments; and (c) the defects are not such that a person attending the sale exercising reasonable care would have been aware of the defect.

G. Nelson & D. Whitman, *Real Estate Finance Law* § 7.20 at 539 (footnote omitted). As the majority opinion illustrates, the Rosenbergs satisfy all of these requirements. They have paid value and are not related to the mortgagee. They had no actual knowledge of the trustee's failure to exercise due diligence in determining the Smidts' new address, and nothing in the recorded instruments put the Rosenbergs on notice of this defect. Finally, the notice defect was not such that attendance at the sale would provide any hint of the defect. As the majority carefully explains, the debtor's absence from the sale does not put the purchaser on inquiry notice nor require him to investigate or buy a lawsuit.

It is therefore clear that the Rosenbergs are BFPs and entitled to possession of the property. How then does the majority justify setting aside the sale? Curiously, the majority takes AS 34.20.090(c), gives it a bizarre interpretation, and uses it to strip the Rosenbergs of their BFP status. Ironically, this statute, like those found in other states, was specifically designed to *enhance* the reliability of title purchased by a BFP at a foreclosure sale. G. Nelson & D. Whitman, *Real Estate Finance Law*, § 7.21 at 552; Note, *The Constitutionality of Power of Sale Foreclosure in Alaska, supra* at 112, 116.

AS 34.20.090(c) provides:

A recital of compliance with all requirements of law regarding the mailing or personal delivery of copies of notices of default in the deed executed under a power of sale is prima facie evidence of compliance with the requirements. *The recital is conclusive evidence of compliance with the requirements in favor of a bona fide purchaser or encumbrancer for value and without notice.*

(Emphasis added.) Since the trustee's deed recited that all notice requirements had been complied with, the statute should have precluded, at the outset, this action by the Smidts against the Rosenbergs. As already discussed, the Rosenbergs are entitled to the property because they are BFPs. For extra protection against unnecessary and costly litigation, and to enhance the reliability of title acquired at a foreclosure sale, our legislature has expressly created a conclusive presumption in favor of the BFP whenever the debtor seeks to overturn the sale on the basis of a notice defect. The Rosenbergs' status as BFPs, as well as the conclusive presumption created by the statute both point toward the same result: the Rosenbergs are entitled to the property.

The majority, however, reasons that because the recitation in the deed did not contain detailed factual statements, the Rosenbergs cannot rely on the statutory presumption and therefore are not BFPs. This, of course, is absurd. Even assuming arguendo that the Rosenbergs are not entitled to the conclusive presumption, this does not defeat their status as BFPs. As discussed above, the Rosenbergs undoubtedly satisfy all three requirements for BFP status; that they may be without the protection of AS 34.20.090(c) does not change that fact. The statute does not define BFP status, but instead offers *extra protection* to one already qualified as a BFP. Indeed, even if AS 34.20.090(c) never had been enacted, the Rosenbergs still would prevail under the universally accepted rule that a voidable foreclosure sale will not be set aside once title has passed to a BFP.

I must also disagree with the majority's decision to engraft onto the statute a requirement of detailed factual statements. The statute nowhere contains this requirement, and it is for the legislature, not this court, to add one if it sees fit to do so. While it is true that to create a conclusive presumption in favor of a BFP, some states require recitals of facts,[1] other states, like

---

1. Mont.Code.Ann. § 71–1–318 (1985); Or.Rev.     Stat. §§ 86.775, 86.780 (1985).

Alaska, do not.[2] A third variation does not require recitations at all, but provides that the deed itself creates the conclusive presumption in favor of the BFP.[3] These variations suggest that there is no one way to balance the rights of creditors and BFPs. Our legislature has struck the balance in such a way that the BFP receives protection from the trustee's recitals in the deed. It is not for this court to alter the balance struck by this statutory scheme. The majority is unable to cite any authority that suggests this court can add a detailed factual statement requirement to a statute that obviously lacks one.

In *Blodgett v. Martsch*, 590 P.2d 298, 301 (Utah 1978), the trustee's deed falsely stated that all statutory requirements for public sale had been satisfied. Utah's statute, like Alaska's, does not expressly require factual statements. Nevertheless, the court held that if the purchaser had been a BFP, he would have been completely protected by this conclusory recital. *Id.* at 303.[4]

The majority suggests that a trustee will always recite that the law has been complied with, and thus the Rosenbergs' reliance on that recital is hollow. However, this "hollow reliance" is exactly what the statute authorizes. Moreover, since the trustee may be liable to the debtor in damages if wrong, the trustee has ample incentive to avoid issuing incorrect recitals. The BFP is therefore even further justified in relying on the accuracy of those recitals. Finally, even if the trustee had recited factual details, the majority does not explain what the Rosenbergs should have done to protect themselves. The fact that letters are returned unclaimed does not per se establish a notice defect. To discover the defect the potential purchaser would have to mount a costly and time consuming investigation. Language in the majority

opinion illustrates the serious shortcomings of such a requirement:

Ultimately, to ... impose[] a duty upon purchasers to investigate the notice given would gut AS 34.20.090(c). No one would ever be a "bona fide purchaser without [inquiry] notice." By requiring would-be purchasers to "investigate or buy a lawsuit," such a holding would further increase the costs and delays accompanying deed of trust sales.

*Opinion* at 784.

In conclusion, I dissent from the majority's holding that the Rosenbergs are not BFPs. That decision may have far-reaching effects, possibly clouding the titles of numerous BFPs who have acquired property through foreclosure sales, and chilling the bidding at future sales to the detriment of debtors and creditors alike. I would therefore return title in the property to the Rosenbergs and leave the Smidts free to pursue their remedy in damages against Johnson, Spendlove, and/or the trustee.

**S.J., Appellant,**

v.

**L.T., Appellee.**

**No. S–889.**

Supreme Court of Alaska.

Nov. 7, 1986.

**2.** Cal.Civ.Code § 2924 (West Supp.1986); Nev. Rev.Stat. § 107.030(8) (1985); Utah Code Ann. § 57–1–28 (Supp.1985).

**3.** Ariz.Rev.Stat.Ann. § 33–811 (Supp.1985).

**4.** Other courts likewise have enforced similar conclusive presumption statutes without judicially engrafting requirements that were not included by the legislature. *See, e.g., Wolfe v. Lipsy,* 163 Cal.App.3d 633, 209 Cal.Rptr. 801, 805 (1985); *Triano v. First Am. Title Ins. Co.,* 13 Ariz. 581, 643 P.2d 26, 28 (App.1982).